In re Arthur W. PORTER and Phyllis S. Porter, Debtors.

**Bankruptcy No. 80–00345T.**

United States Bankruptcy Court, E. D. Pennsylvania.

Nov. 28, 1980.

William T. Windsor, Jr., Philadelphia, Pa., for Union Bank and Trust Company.

Karl E. Friend, Allentown, Pa., for debtors.

## MEMORANDUM

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Debtors have filed an application to avoid the lien of Union Bank and Truste Company, pursuant to 11 U.S.C. § 522(f) (1979).[1] Specifically, debtors assert that a judgment note signed by them in favor of Union Bank

and recorded on October 22, 1976 in the amount of $50,000 is a judicial lien avoidable by virtue of § 522(f)(1) of the Bankruptcy Code.[2] For reasons hereinafter given, we conclude that the lien of Union Bank, if any, is avoidable as a judicial lien pursuant to § 522(f)(1), and, therefore, shall be avoided to the extent it impairs the exemption claimed by the debtors in their real estate.[3]

Debtors' application to avoid liens was filed on September 12, 1980. By letter dated October 3, 1980, Union Bank, through its counsel, requested a hearing on the application, asserting that avoidance of its lien would deprive the Bank of due process.

At hearing on the debtors' application, November 5, 1980, debtors presented no testimony, the Bank offered only the testimony of Willard H. Schnader, custodian of the Bank records involving the Porters.

The first question to which this Court must respond is whether the Bank's lien, if any, is a judicial lien (11 U.S.C. § 101(27)) or a security interest (11 U.S.C. § 101(37)) within the meaning of the Bankruptcy Code. The parties have already stipulated "that a judgment note was recorded on October 22, 1976, in the amount of $50,000 in favor of Union Bank and signed by [the debtors]." N.T. at 5.[4]

A companion document, executed on October 19, 1976, and entitled "Side Collateral Pledge Agreement," refers to both the judgment note and real estate of the debtors located at "RD # 1, Box 216, Center Valley, Lehigh County, Pennsylvania, 18034." The debtors have since disposed of that real estate. However, the Bank contends it holds a lien in the nature of a security interest on real estate of the debtors acquired in 1977 (which real estate is

---

1. Debtors' application seeks avoidance of two other liens as well; however, debtors have since withdrawn their application with respect to those creditors, First National Bank of Allentown and Merchants National Bank. *See* Notes of Testimony at 2 [hereinafter cited as N.T.]; Debtor's Memorandum of Law at 1.

2. Section 522(f)(1) provides:
   (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the

extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
   (1) a judicial lien; . . .

3. This Memorandum constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

4. The note was not offered as evidence in connection with this proceeding.

now the subject of the application for lien avoidance) by virtue of the judgment note, the side collateral pledge agreement, taken together with a revival of the note filed by the Bank on February 4, 1980.[5]

■ Counsel for debtors declined to take any position with respect "to the validity of the revival of the 1976 judgment as it affects the [presently owned real estate] under State law". N.T. at 7. Nonetheless, assuming, *arguendo*, that the revival, filed in February, 1980, and as of that later date, brought the after–acquired real estate within the scope of the judgment note filed previously, we conclude that such a note constitutes a judicial lien within the meaning of the Code and adopt the reasoning of our colleague in *In re Natale*, 5 B.R. 454, 457–458 (E.D.Pa.1980) (Goldhaber, B. J.):

The Credit Union argues, however, that the lien which arose by the confession of judgment and issuance of the D.S.B. was not a judicial lien but a security interest. It contends that this is so because the parties agreed that the lien should be created. This Credit Union points to the definitions of security interest and judicial lien in the Code in support of its assertion that a security interest is a lien created by agreement of the parties while a judicial lien is a lien created by involuntary judicial process.

We cannot agree with this interpretation of the Code. While it is true that under the Code a security interest is a lien created by agreement of the parties, a judicial lien is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." We interpret that definition to include liens created by "voluntary" judicial process as well as by "involuntary" judicial process.

In the instant case no lien arose merely by the agreement of the parties (since, as we found above, the documents signed by the debtors did not constitute a security

agreement). The lien in question arose by virtue of the action of the Credit Union in filing the promissory note and the statement of income and the action of the prothonotary in issuing the D.S.B. This was judicial process and the fact that the parties agreed that this should be one did not change its nature.

The Bank further contends, however, that these documents, taken together, create a "security interest," within the meaning of § 101(37) of the Code, and, therefore, cannot be avoided. *See* § 522(f). We conclude that the judgment note, the side collateral pledge agreement and the judgment revival, taken individually or together, do not constitute a security interest in the debtors' after–acquired property within the meaning of the Code. Although the Bank points to the express language of the side collateral pledge agreement, purporting to create a "security interest," such interest is granted only in "property listed" in the agreement itself. The only property listed therein is property no longer owned by the debtors. Neither can the document be reasonably interpreted to include after–acquired real estate as collateral, the Bank's protestations to the contrary notwithstanding. In addition, the side–collateral pledge agreement was never recorded.[6]

■ We do not reach the issue raised by the Bank, *i. e.*, of whether an interest or lien created prior to the effective date of the Bankruptcy Code (October 1, 1979) can be avoided constitutionally, since we have previously concluded that the real estate which is the subject of the lien avoidance application did not come within the scope of the judgment note, if at all, until the filing of the revival in February, 1980, after the effective date of the Code. We decline to adopt the Bank's argument that the filing of the revival causes the date of the creation of the Bank's interest, if any, to relate back to the original filing of the judgment

---

**5.** The debtors filed their joint voluntary petition (Chapter 7) on February 20, 1980.

**6.** See *In re Natale*, supra at 457 n.8. There has been no showing, either legally or factually, that these documents constitute a valid security interest in real estate under Pennsylvania law.

note in 1976. *See* N.T. at 9. In addition, the Bank argues that avoidance of such liens will cause "lenders to use the more expensive second mortgage route . . . and a little band of present debtors will get a totally undeserved windfall under the new Bankruptcy Code . . . ." Memorandum of Union Bank at 6. The Bankruptcy Code was enacted in November, 1978. That new law, like any other, presents those it affects with certain choices. The failure of the Bank to take steps which may have better protected its interests is not a valid argument in opposition to lien avoidance–neither is the fact that Congress may have caused lenders' options to become more costly.

Finally, we do not reach other issues raised by the debtors, which deal with other grounds on which the Bank's "lien" may be avoided, for two reasons: 1) The issues are moot, given the Court's resolution of this matter; and 2) the debtors first raised such issues in their memorandum of law.

The Bank's lien shall be avoided to the extent it impairs debtors' claim of exemption on their real estate.