**In re John H. BURKHOLDER and Carol A. Burkholder, Debtors.**

**John H. BURKHOLDER and Carol A. Burkholder, Plaintiffs,**

**v.**

**NATIONAL CENTRAL BANK and its successors, Defendant.**

**Bankruptcy No. 80–00303T.**
**Adv. No. 80–0220.**

United States Bankruptcy Court,
E. D. Pennsylvania.

May 21, 1981.

Jacques H. Geisenberger, Jr., Lancaster, Pa., for debtors.

William C. McCarty, Lancaster, Pa., for defendant.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

The debtors in this case have filed a complaint to avoid the lien of National Central Bank [now Hamilton Bank and hereinafter referred to as the Bank], pursuant to 11 U.S.C. § 522(f)(1) (1979).[1] For reasons hereinafter given, we conclude that the lien should be avoided.[2]

On March 23, 1978, the debtors entered into a reconsolidation loan transaction with the Bank. The debtors signed an Installment Loan Note containing a confession of judgment clause, a Disclosure for Confession of Judgment and a Notice of Right to Rescission. Judgment was entered on April 11, 1978. On that date, debtors owned real property located at 471 Valley Road, Lancaster, Pennsylvania. On February 14, 1980, the debtors filed a voluntary joint

---

1. Section 522(f)(1) of the Bankruptcy Code provides:

   (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest, of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

   (1) a judicial lien; . . .

2. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

petition under Chapter 7 of the Bankruptcy Code, codified as Title 11 of the United States Code. An order for relief was entered on that date. The debtors listed a portion of their equity in the above named property as exempt under Section 522(d)(1) of the Code.[3] The Bank filed an objection to the claim of exemption to which the debtors have moved for dismissal. Subsequent to the Bank's filing of objections, the debtors filed a complaint to avoid the judicial lien impairing their exemption. The Bank responded by raising the affirmative defenses of incorrect characterization of its lien as a judicial lien, and the unconstitutionality of applying Section 522(f)(1) retroactively to avoid liens arising prior to enactment of the Code. The Bank contends that the lien securing their loan to the debtors arising from a recorded confession of judgment note is a security interest rather than a judicial lien. The Bank further contends that if the lien were found to be a judicial lien, the application of Section 522(f)(1) to liens arising prior to the enactment of the Bankruptcy Reform Act amounts to a violation of the Fifth Amendment to the United States Constitution. For reasons hereinafter given, we conclude: (1) the Bank's objections to the debtors' claim of exemptions do not lie and therefore shall be dismissed; (2) the lien of the Bank is a judicial lien within the definition of the Bankruptcy Reform Act; (3) the lien is constitutionally avoidable to the extent it impairs the debtors' exemption.

■ The first issue presented is whether the Bank's objection to the debtors' claim of exemption is proper. The debtors request dismissal of the objection, and assert that the right to claim such an exemption is unconditional. This court has resolved this issue in *In re Anspach*, 6 B.R. 700 (Bkrtcy. E.D.Pa.1980).

Our decision in *Anspach* supports the debtors' contention that the existence of liens is no barrier to the right to claim an exemption. The Bank's objection is unfounded because the claim of exemption itself in no way affects the Bank's interest in the real estate involved. *In re Anspach, supra.* In order to avoid the Bank's lien, or otherwise adversely affect its interest in the exempt property, the debtor must affirmatively seek the Court's review to avoid the lien pursuant to Section 522(f). This procedure provides the secured party with notice and an opportunity to be heard before its interest is affected. *In re Anspach, supra; In re Riffle*, Bankr. No. 1–80–00233 (M.D. Pa. July 18, 1980). Therefore, the Bank's objections to the debtors' claim of exemptions are dismissed.

■ In response to the debtors' application for avoidance of the Bank's lien pursuant to Section 522(f)(1), the Bank contends that its lien on the exempt property is not a judicial lien, but rather, a security interest created by the terms set forth in the purported security agreement, the Installment Loan Note and the accompanying Disclosure. The issue of whether a confession of judgment constitutes a security interest was recently before this court in *In re Porter*, 7 B.R. 356 (Bkrtcy.E.D.Pa.1980). In a similar fact situation, the creditors contended that the lien arising from a confessed judgment note was a security interest because the parties agreed to allow a judgment to be recorded against them. We adopted the reasoning of our colleague, Judge Goldhaber, in *In re Natale*, 5 B.R. 454 (Bkrtcy.E.D.Pa.1980):

> While it is true that under the Code a security interest is a lien created by agreement of the parties, a judicial lien is defined as a "lien obtained by judgment, levy, sequestration, or other legal, equitable process or proceedings." We interpret that definition to include liens created by "voluntary" judicial process as well as "involuntary" judicial process.
>
> In the instant case no lien arose merely by the agreement of the parties (since, as

---

**3.** Under § 522(m) allowing each debtor in a joint petition to claim exemptions separately, John Burkholder has claimed as exempt under Section 522(d)(1) equity in the real estate in the amount of $7,085, and Carol Burkholder has claimed as exempt equity in the amount of $6,650.

we found above, the documents signed by the debtors did not constitute a security agreement.) The lien in question arose by virtue of the action of the Credit Union in filing the promissory note and the statement of income and the action of the prothonotary in issuing the D.S.B. This was judicial process and the fact that the parties agreed that this should be done did not change its nature.

*Natale*, at 458.

The laws governing secured transactions in Pennsylvania prohibit the creation of a security interest in real property except by mortgage. 13 Pa.Con.Stat. Ann. § 9104 (Purdon). Since the clause purporting to create the security interest contained in the Installment Loan Note is insufficient to create a mortgage (nor is it recorded as such), we conclude no security interest was created in the debtors' real property. Therefore, following the above named and other reported decisions on this issue [4], we find that the lien held by the Bank is a judicial lien which arose when the note was left for entry of judgment, not when the debtors agreed that judgment be entered against them.

■ The final issue presented is whether Section 522(f) can be constitutionally applied to avoid a lien which arose prior to the enactment of the Code. The Bank contends that the retroactive application of that section to avoid its judicial lien on debtors' real estate constitutes a taking of private property without just compensation in violation of the Fifth Amendment of the United States Constitution.[5] We agree with those cases which have decided that it was the intent of Congress that the Code be applied retroactively, and we also conclude that the Section is valid as applied to the facts of this case.

The power to legislate on the subject of bankruptcies is expressly granted to Congress by the Constitution. Article 1, section 8, clause 4. This power is subject to the Necessary and Proper Clause of Article 1, section 8, clause 18, and limited by the requirements of the Fifth Amendment. *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). For provisions of the Bankruptcy Act to violate the Fifth Amendment, they must be grossly arbitrary and unreasonable as to be incompatible with fundamental law. *Hanover National Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902); *Campbell v. Alleghany Corporation*, 75 F.2d 947 (4th Cir. 1935), *cert. denied* 296 U.S. 581, 56 S.Ct. 92, 80 L.Ed. 411 (1937).

In *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), the Court determined that a taking could occur as the consequence of otherwise valid legislation. The Court in that case noted that Congress may properly regulate property rights, but that when regulation goes too far, it may amount to a taking. However, the Court in other cases decided that not all takings affront the constitution. Not every loss of, or injury to, property requires constitutional protection. *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960); *Omnia Commercial Co. v. United States*, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1922). The subject has been treated as a question properly turning upon the particular circumstances of each case. *United States v. Central Eureka Mining Co.*, 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958).

As noted above, Section 522(f) of the present Bankruptcy Code is here challenged as an unconstitutional retroactive taking of property. The question of retroactivity has been the subject of varying interpretation by the bankruptcy courts.[6] We conclude

4. *In re Hines*, 3 B.R. 370 (Bkrtcy.D.S.D.1980); *see also, In re Laird*, 6 B.R. 273 (Bkrtcy.E.D.Pa. 1980).

5. The Fifth Amendment provides: "no person . . . (shall) be deprived of life, liberty, or property, without due process of law; nor shall

private property be taken for public use, without just compensation."

6. Congress intended that the Code be applied retroactively. *In re Rodrock*, 642 F.2d 1193 (10th Cir. 1981); *Contra, In re Malpeli*, 7 B.R. 508 (Bkrtcy.N.D.Ill.1980); *In re Pape*, 7 B.R. 443 (Bkrtcy.N.D.Fla.1980).

that Congress intended the Bankruptcy Reform Act to operate retroactively; that is, it affects rights which may have vested before the effective date of the Code, or even those which may have vested before the enactment date. This alone, however, is insufficient to find the section unconstitutional. While the retroactive application of legislation may be a consideration in determining the fairness and reasonableness of particular legislation, it is established that the retroactive scope of a statute may properly affect property rights which have vested. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Howell Electric Motors v. United States*, 172 F.2d 953 (6th Cir. 1947). In *Usery*, the Supreme Court noted,

> ... our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it respects otherwise settled expectations. See *Fleming v. Rhodes*, 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947); *Carpenter v. Wabash R. Co.*, 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940); *Norman v. Baltimore & Ohio R. Co.*, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935); *Home Bldg. & Loan Asso. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1931); *Louisville & Nashville R. Co. v. Mottley*, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911).

*Usery*, 428 U.S. at 16, 96 S.Ct. at 2892. The Court also stated:

> It is by now well established that legislative Acts adjusting the burdens and benefits of economic life *come to the Court with a presumption of constitutionality,* and that the burden is as one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. See e. g. *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487–488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955).

*Usery*, 428 U.S. at 15, 96 S.Ct. at 2892 (emphasis ours.)

It is with this background that we begin our discussion of the substantive merits of this case. The Bank cites the recent decision of *In re Rodrock*, 642 F.2d 1193 (10th Cir. 1981), in support of its position. The *Rodrock* decision is indeed persuasive and somewhat similar to the case at bar.[7] *Rodrock* suggests that the Supreme Court's decision in *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) requires a finding of unconstitutionality, as the operation of Section 522(f) results in a taking of rights in specific property.

The *Radford* decision dealt with the substantive rights of mortgagees as modified by Section 75(s) of the Bankruptcy Act of 1898, 11 U.S.C. § 203 (1898). The Court in *Radford* explained in detail the basic rights of mortgagees, and how bankruptcy laws can validly affect those rights. By enumerating the various rights the mortgagee possessed under state law and comparing them with the rights accorded the mortgagee under the challenged bankruptcy provision, the Court determined that the section in question resulted in the loss of the mortgagee's rights in specific property. Because the bankruptcy laws are subject to the Fifth Amendment limitations, the law was deemed an unconstitutional taking of property.

The Court later interpreted the *Radford* decision in *Wright v. Mountain Trust Bank*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937). The law there upheld was an amended version of the legislation found to be unconstitutional in *Radford*. In explaining *Radford*, the Court said,

> The opinion enumerates five important substantive rights in specific property which had been taken. It was not held that the deprivation of any one of these rights would have rendered the Act invalid, but that the effect of the statute in its

---

**7.** *Rodrock* dealt specifically with Section 522(f)(2) and the avoidance of non-possessory, non-purchase money security interests in personal property. For a well reasoned opinion deciding in favor of the validity of Section 522(f)(2), see *In re Paden*, 10 B.R. 206 (Bkrtcy. E.D.Pa.1981).

entirety was to deprive the mortgagee of his property without due process of law. *Wright,* at 457, 57 S.Ct. at 559.

Further guidance is offered by the case of *Armstrong v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960), where the holder of a materialman's lien under state law complained of a taking of his property when the subject matter of his lien was transferred to the government, and enforcement was enjoined on the grounds of sovereign immunity. The Court began its analysis of the Fifth Amendment claim by finding that under state law, the supplier of materials for the building of a vessel has a lien on the vessel and the material furnished. Upon default of the vendee, the materialman could look to the boat and the unused material for satisfaction of its lien. Citing *Radford,* the Court noted that absent suggestion to the contrary, the materialmen's lien was to be regarded as no different from the liens in *Radford.* The Court states, "they were entitled to resort to the specific property for the satisfaction of their claims." *Armstrong,* 364 U.S. at 44, 80 S.Ct. at 1566. Thus, the Court found a compensable property right, and later determined it had been taken without just compensation.

We conclude that the facts in this case are distinguishable from those presented in *Radford, Wright,* and *Armstrong,* in that we are not dealing with the rights of mortgagees, but with the rights of a judicial lienor. A judicial lienor has no "rights in specific property." Unlike a mortgagee, he does not look to a specific piece of property from which to satisfy his debt, nor does he have an interest in specific property. Rather, he looks to a general fund of property, if any, owned by the debtor at the time his judgment becomes a lien. As noted in the recent case of *In re Ashe,* 10 B.R. 97 (Bkrtcy.M.D.Pa.1981),

Under Pennsylvania law,

... a judgment is a general and not a specific lien. If there be personal property of debtor it is to be satisfied out of that. If not it is a lien on all his real estate without discrimination. Hence, the creditor is not interested in the property as property, but only in his lien.

*Ashe,* at 99 (citing *Grevemeyer v. Southern Mutual Fire Insurance Co.,* 62 Pa. 340 (1867)).

There can be no taking of property in this case as we find no compensable interest in property exists. Therefore, we need not determine whether this law is grossly arbitrary or unreasonable so as to be incompatible with fundamental law.[8]

In view of the presumption of validity of legislative acts expressed in *Usery, supra,* the general policy that a trial court should resist declaring a statute unconstitutional unless no doubt exists as to in its invalidity,[9] and our conclusion that the judicial lienor here enjoys no rights in specific property, we hold that Section 522(f)(1) is constitutional as applied to the facts of this case.

For the above stated reasons, we dismiss the Bank's objections.

---

8. We note that in this case, the Bank's lien on the real estate remains to the extent the equity remaining in the property exceeds the amount claimed by the debtor as exempt. *In re Van Gorkom,* 4 B.R. 689 (Bkrtcy.D.S.D.1980); *In re Bradford,* 5 B.R. 18 (Bkrtcy.D.Nev.1980). The equity remaining in the debtors' property after allowing for the lien of two existing mortgages is $18,900. Since the debtors claim on $13,735 as exempt, the Bank's rights arising upon obtaining the lien remain and can be enforced against the property to the extent of $5,165.

9. *In re Baker,* 6 B.C.D. 747, 5 B.R. 397 (Bkrtcy. W.D.Mo.1980); *In re Beck,* 4 B.R. 661 (Bkrtcy. C.D.Ill.1980).