In re Richard Thomas FLEGE aka Rich-ard T. Flege and Linda Mae Flege, aka Linda M. Flege, Debtors.

Richard Thomas FLEGE aka Richard T. Flege and Linda Mae Flege, aka Linda M. Flege, Debtors-Plaintiffs,

v.

AKRON CITY HOSPITAL, Defendant,

and

M. O'Neil Co., Defendant.

Bankruptcy No. 581–1094.

Adv. Nos. 581–0649, 58–0660.

United States Bankruptcy Court, N. D. Ohio.

Feb. 17, 1982.

---

Shirley F. Majors, Akron, Ohio, for debtors-plaintiffs.

Joseph Kahn, Akron, Ohio, for defendants.

H. F. WHITE, Bankruptcy Judge.

These actions were commenced by Debtors, Richard Thomas Flege and Linda Mae Flege, to have avoided judicial liens filed by Defendants, M. O'Neil Co. and Akron City Hospital, against the property owned by the Debtors. There is no dispute between the parties as to the facts. The cases were submitted for decision upon briefs filed by both parties.

## FINDING OF FACT

Debtors filed their Petition in Bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on June 30, 1981. Defendant, Akron City Hospital, was listed as a creditor in the schedules filed at that time. An amendment to the schedules was filed on July 31, 1981 listing M. O'Neil Co. as a creditor. Both were scheduled as unsecured creditors.

M. O'Neil Co. obtained judgment against the Debtors on October 2, 1978 in the amount of $220.80 plus costs and interest. Akron City Hospital obtained judgment against the Debtors on February 28, 1979 in the amount of $792.83 plus costs and interest. Both creditors, following the granting of a money judgment in their favor, filed a certificate of judgment on March 8, 1979 and February 28, 1979 respectively with the Summit County Clerk of Court, Judgment Lien Docket No. 867, page 80 and Judgment Lien Docket 83, Page 38, which became liens on all real property owned by the Debtors.

Debtors are the owners of real property known as 464 Barwell Street, Akron, Ohio. The fair market value of said property is $30,000.00. A first mortgage against the real property is held by TransOhio Savings Association, fka United Savings Association, in the principal amount of $22,277.94. In addition to the principal amount due,

there are arrearages due in the amount of $1,510.10.

Debtors together claimed a $10,000.00 exemption in their real estate pursuant to Ohio Revised Code Section 2329.66(A)(1). There was no objection filed by any party in interest, including M. O'Neil Co. and Akron City Hospital to this or any other exemption claimed by the debtors and the exemptions were allowed.

## ISSUE

The issues presented in this case are 1. whether the judicial liens held by M. O'Neil Co. and Akron City Hospital may be avoided pursuant to 11 U.S.C. Section 522(f)(1) and 2. whether said statute may be applied so as to avoid liens created after the enactment of the Bankruptcy Reform Act but prior to the Act's effective date.

## LAW

11 U.S.C. Section 522(f)(1) provides that:
(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien...

Subsection (2) of this section provides for the avoidance of non-purchase money, non-possessory security interests.

This case presents this Court for the first time [1] with the issues arising out of a debtor's attempt to avoid a judicial lien pursuant to 11 U.S.C. Section 522(f)(1). This Court has already decided on several occasions the validity of 11 U.S.C. Section 522(f)(2) and the avoidance of nonpossessory security interests. *In re Curry, supra,;*

---

1. Although this case is the first case on which this Court has been presented with the issues herein presented as regards 11 U.S.C. Section 522(f)(1), this Court earlier stated, in holding that the avoidance of the nonpossessory, non-purchase-money security interest pursuant to 11 U.S.C. Section 522(f)(2) was constitutional, that:

"... when debtors in Ohio claim exemptions under Ohio Rev.Code Ann. 2329.66, the debtors are entitled to avoid judicial liens and nonpurchase-money security interests on household and personal goods to the extent of the exemptions allowed under Ohio Rev. Code section 2329.66, in the absence of such liens". *In re Curry,* 5 B.R. 282, 288 (Bkrtcy. N.D.Ohio 1980).

*In re Hill,* 4 B.R. 310 (Bkrtcy.N.D.Ohio 1980); *In re Fisher,* 6 B.R. 206 (Bkrtcy.N.D. Ohio 1980). The arguments raised by Defendants to support their contention that their liens should not be avoided are highly similar to arguments raised in these cases arising under 11 U.S.C. Section 522(f)(2). This Court does not find there to be any differentiating factor between the judicial lien in 11 U.S.C. Section 522(f)(1) and the nonpossessory, nonpurchase-money security interest in 11 U.S.C. Section 522(f)(2) such as would require this Court to hold in a different manner than it has previously held as regards 11 U.S.C. Section 522(f)(2).

### A.

In order to avoid a judicial lien under this statute, it must first be shown that there is a judicial lien to avoid and second, that such lien impairs an exemption to which the debtor would otherwise be entitled.

The Bankruptcy Code defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. Section 101(27). The liens involved here were obtained by judgment. As such, they fall within the definition of a judicial lien as set forth in 11 U.S.C. Section 101(27).

Next, it must be shown that the liens in question impair exemptions which Debtors are entitled to take. It is Defendants' argument that this requirement cannot be met herein. This argument is based on Ohio Revised Code Section 2329.661(C). That section provides that: "Section 2329.-66 of the Revised Code does not affect or invalidate any sale, contract of sale, conditional sale, security interest, or pledge of any personal property, or any lien created thereby."

As this Court reads this section, said statute is not applicable to the instant case. Said statute provides that 2329.66 does not affect or invalidate "any sale, contract of sale, conditional sale, security interest, pledge ... or any lien created thereby." This case does not involve a sale, contract of sale, or a conditional sale.

"Security interest" is defined at 11 U.S.C. Section 101(37) as being a "lien created by agreement". Here, the liens in question were not created by agreement between debtors and the defendants but instead were created upon the filing of a judgment lien against the debtors.

In like manner, Defendants' lien is not a pledge. The term "pledge" is not defined in the Code. It has been defined elsewhere, however, as being a "bailment of personal property as security for some debt or engagement". 57 Ohio Jur.2d, *Words and Phrases* (1963). No such bailment occurred herein.

■ Thus, Defendants must rely on the language in Ohio Revised Code Section 2329.661(C) stating that 2329.66 does not affect "any lien created thereby" for their argument. This language can only be understood as it relates to the entirety of the statutory subsection. "Lien created thereby" relates back to the various items set forth in Subsection (C)—that is, sale, contract of sale, pledge, etc.—and is not to be read so as to include Defendants' judicial liens. Instead, any lien created by a sale, conditional sale, or security interest is covered by Ohio Revised Code Section 2329.-661(C).

Assuming arguendo that said statute does cover the judicial liens in question, this Court must still reject Defendants' argument. Defendants argue that the judicial liens herein do not impair any exemptions as 2329.661(C) does not allow a debtor to claim any exemptions under 2329.66 when to do so would affect or invalidate any "sale, contract of sale ... or lien created thereby." As Defendants have a judicial lien on Plaintiff's property, Defendants would argue that Ohio Rev. Code 2329.-661(C) prevents the Debtors from claiming any exemptions on the real property to the extent it is charged with Defendants' liens. Defendants would thereby have this Court hold that Ohio law bars a debtor from taking advantage of the protections afforded that same debtor under the federal bankruptcy laws. Such an argument would in effect "write-out" 11 U.S.C. Section 522(f)(1) as regards the State of Ohio.

In *In re Curry, supra.*, a similar argument was made by the creditor therein regarding the avoidance of a nonpurchase-money security interest. In rejecting the argument this Court stated:

The power to legislate on the subject of bankruptcies is conferred expressly upon Congress by the Constitution of the United States. Article I, Section 8, Clause 4 of the United States Constitution provides: 'the Congress shall have power . . . to make uniform laws on the subject of bankruptcies throughout the land.' In addition to this express grant, there is the general grant of power under Article I, section 8, clause 18 that: 'The Congress shall have the power . . . to make all laws which are necessary and proper for carrying into Execution the foregoing powers . . .' . . .

Pursuant to the supremacy clause, Article VI, clause 2 of the United States Constitution, any state legislation which frustrates the full effectiveness of federal law is rendered invalid. (Citations omitted).

Subject to the general limitation on state powers as the prohibition against impairing the obligations of contracts, a state may pass and enforce insolvency and even 'bankruptcy' laws, binding upon persons and property within its jurisdiction, whenever there is no act of Congress extant with which the state laws would conflict. *Int'l Shoe Co. v. Pinkus*, 278 U.S. 261 at 263–64, 49 S.Ct. 108 at 109–110, 73 L.Ed. 318 (1929).

Ohio Rev.Code Ann. section 2329.661(C) which provides that the Ohio exemptions do not invalidate any security interests is in conformance with this constitutional prohibition against any state law impairing the obligation of contracts. However, Ohio Rev.Code Ann. Section 2329.-661(C) is in direct conflict with 11 U.S.C. Section 522(f) and the act of Congress prevails over the conflicting state law.

*In re Curry, supra*, affd. 11 B.R. 716 (D.C.Ohio 1981)

11 U.S.C. Section 522(f) was enacted by Congress to ensure that a debtor was afforded a fresh start following bankruptcy by protecting the debtor's exemptions and his discharge. H.R.Rep.No.595, 95th Cong., 1st Sess. 362 (1977); S.Rep.No.989, 95th Cong., 2nd Sess. 76 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862, 6318. The purpose of Section 522(f) of the Bankruptcy Code, as regards the judicial lien, is stated in the following excerpt from the Report of the House of Representatives:

In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. H.R.Rep.No.595, *supra* at 126–127, U.S. Code Cong. & Admin. News 1978, pp. 6087–88.

To allow Ohio Revised Code Section 2329.661(C) to deny these debtors the right to claim exemptions they would otherwise be entitled to is to nullify, to an extent, one of the purposes Congress had in enacting the Bankruptcy Reform Act of 1978. To the extent the debtors are denied their exemptions, they would also be denied the fresh start which Congress intended them to have following bankruptcy. Accordingly, as Ohio Revised Code Section 2329.661(C) conflicts with federal law as set forth in 11 U.S.C. Section 522(f)(1), the federal law must prevail over Ohio law. Further, the creditors must object to the exemptions claimed by debtors [2]. Section 522(L) pro-

---

**2.** 11 U.S.C. Section 522(*l*) provides:

"The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest

vides "... Unless a party in interest objects, the property claimed as exempt on such list is exempt."

### B.

Defendants' next argument is that 11 U.S.C. Section 522(f)(1) does not operate retroactively. The judicial liens sought to be avoided were created during the gap period for the Bankruptcy Reform Act. A determination that this statute operates retroactively requires this Court first to hold that Congress intended a retroactive application of 11 U.S.C. Section 522(f)(1) and, secondly, that such application is constitutional.

■ Whether a statute may be applied retroactively is a question of Congressional intent. *Hassett v. Welch*, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938). Section 401(a), Title, IV, Pub.L. 95–598 provides that the Bankruptcy Act of 1898, as amended, was repealed as of October 1, 1979. Said act was to survive the enactment of the Bankruptcy Reform Act of 1978, after October 1, 1979 only to the extent set forth in Section 403(a) of Title IV, Pub.L. 95–598. That section, known as the "Savings Provision", allowed the Bankruptcy Act of 1898 to survive only for those cases "commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case". *Id.* "... the substantive rights of parties in connection with any such bankruptcy case, matter or proceeding..." were to ... "continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted." *Id.*

■ These sections of the Bankruptcy Reform Act make it clear that Congress intended that 11 U.S.C. Section 522(f)(1) be applied retroactively in the instant case. This case was commenced after October 1, 1979. Due to the repeal provision set forth in section 401(a), Title IV, the Bankruptcy Act of 1898 does not apply notwithstanding the fact that the judicial liens held by Defendants were incurred prior to Debtors

filing their Petition in Bankruptcy. As the Bankruptcy Act of 1898 does not apply due to its repeal, the Bankruptcy Reform Act of 1978, including 11 U.S.C. Section 522(f)(1) must apply herein. If it were not to apply, there would be no bankruptcy laws applicable. This Court holds that it was Congress' intent that the Bankruptcy Reform Act of 1978 be applied retroactively.

As it was Congress' intent that this section be applied retroactively, it must next be determined whether such an application is constitutional. "The bankruptcy power, like the other great substantive powers of Congress is subject to the Fifth Amendment." *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935).

In *Radford*, the Supreme Court was faced with the issue of the constitutionality of the Frazier-Lemke Act, which Act amended section 75 of the Bankruptcy Act. This Act grew out of the substantial financial difficulties many of this nation's farmers experienced during the Depression. It allowed the farmer-mortgagor several alternatives following the unsuccessful attempt by the farmer to obtain the requisite number of assents to a composition plan. In *Radford*, the bankrupt had exercised his right to stay all proceedings against the farm which had been commenced by the mortgagee bank. The Act provided that the stay was to be in effect for a period of five years at the end of which time the bankrupt could purchase the farm for its appraised value. The Act expressly provided that its provisions only applied to those debts which were existing at the time the Act became effective.

The Supreme Court held that the effect of the Frazier-Lemke Act was the taking of substantive rights in specific property acquired by the bank prior to the Act. *Radford, supra.* at 590, 55 S.Ct. at 863. The Court looked to the law of the State, Kentucky, and found that the mortgagee-creditor had five, specific, vested rights which rights were denied the creditor due to the

passage of the Act.[3] Due to this, the law was held to be unconstitutional.

Numerous cases dealing with the constitutionality of 11 U.S.C. Section 522(f)(1) have examined the nature of the judicial lien and have relied on the lien's nature to hold that the *Radford* case did not apply so as to make 11 U.S.C. Section 522(f)(1) unconstitutional.

In *In re Burkholder*, 11 B.R. 346 (Bkrtcy. E.D.Pa.1981), the Court looked to Pennsylvania law to determine whether or not the rights held by the creditor by virtue of the judicial lien were such that the constitutional protection set forth in *Radford* applied. Under Pennsylvania law, it was held, the lienor has no rights in specific property, but must look to the "general fund of property, if any, owned by the debtor at the time his judgment becomes a lien". *In re Burkholder, supra* at 351. Thus, in *Burkholder*, the Court held that there could be no taking in violation of the Fifth Amendment as the lienor had no compensable interest in any property of the debtor.

And in *In re Ashe*, 10 B.R. 97 (Bkrtcy.M. D.Pa.1981), 11 U.S.C. Section 522(f)(1) was found to be constitutional as the interest under question did not rise to the level of that in *Radford* and thus no violation was had of the Fifth Amendment. In *Ashe*, the creditor—a bank—had a judgment lien which the Court held to be general and non-specific. Due to the nature of the lien, the Bank did not have an interest in Debtor's property as property but only in his lien. It was stated therein that:

> We consider that the *Radford* umbrella shields property interests which are contractually specific in the sense that the property interest in *Radford* was specific. The lien of the plaintiff is not such an interest. *In re Ashe, Supra.* at 99.

See also *In re Lattimore*, 12 B.R. 111 (Bkrtcy.W.D.N.Y.1981).

Thus, the nature of the judicial lien in Ohio must be examined in order to determine whether it is of the general nature of the judicial lien in Pennsylvania so that the *Radford* protection would not apply or whether under Ohio law the lien provides its holder with more specific rights.

The procedure for obtaining a judicial lien is set forth in Ohio Revised Code Section 2329.02. That section provides that "Any judgment or decree rendered ... within this state shall be a lien upon lands and tenements of each judgment debtor within any county of this state from the time there is filed in the office of the clerk of the court of common pleas of such county a certificate of such judgment, ..."

 The judicial lien, in Ohio, operates as a part of the remedy to enforce the collection of a debt and is entirely dependent for its existence upon the statutory provision which created it. *Executors of Daniel Waymire v. Staley*, 3 Ohio 366 (1828). The lien is a general lien—no rights are given in any specific property owned by the debtor. *Myers v. Hewitt*, 16 Ohio 449 (1847); *White v. Denman*, 1 Ohio St. 110 (1853).

 This Court concurs with those Courts which have held that the protection in *Radford* does not extend to the avoidance of a general lien. Under Ohio law, the judicial liens held by Defendants are general in nature and entirely dependent upon the statute which created them for their continued existence. Unlike the mortgage lien in *Radford*, the judgment lien holder in Ohio has no rights in specific property of its debtor. As such, there has been no taking sufficient to invoke the mandates of the Fifth Amendment.

---

**3.** The five vested rights referred to in *Radford* were:

"1. right to retain lien until indebtedness thereby secured is paid;

2. right to realize upon security by judicial public sale;

3. right to determine when such sale shall be held, subject only to discretion of court;

4. right to protect its interest in the property by bidding at such sale and thus to assure having mortgaged property devoted primarily to satisfaction of debt, either through receipt of proceeds of fair competitive sale or by taking property itself; and

5. right to control meanwhile the property during the period of default, subject only to discretion of court, and to have rents and profits collected by receiver for satisfaction of the debt."

## C.

Finally, it is the finding of this Court that Defendants' judicial liens do impair Debtors' exemptions. Debtors have claimed a $10,000.00 joint exemption on their real property pursuant to Ohio Revised Code Section 2329.66(A)(1). As no parties in interest objected to this claim of exemption, the property is so exempt. 11 U.S.C. Section 522(1).

The fair market value of the real property on which the exemption was claimed is $30,000.00. The property is subject to the first mortgage of TransOhio Savings Association in the amount of $22,277.94. This mortgage being a valid lien against the real property, only $7,722.06 is available to the Debtors to be exempted. 3 Collier on Bankruptcy, 15 ed. (1981) at 65-6. Unless Defendants' judicial liens are avoided, however, only $6,707.43 will be available to the Debtors to be exempted. Accordingly, Debtors' exemptions are impaired by virtue of Defendants' judicial liens to the full extent of those liens.

Therefore, it is the conclusion of this Court that Debtors may avoid the judicial liens held by Defendant, M. O'Neil Co., in the amount of $220.80 plus costs and interest and the judicial lien of Akron City Hospital in the amount of $793.83 plus costs and interest pursuant to 11 U.S.C. Section 522(f)(1) as said liens impair exemptions duly claimed by Debtors under Ohio Revised Code Section 2329.66(A)(1).