In re Richard D. LOWELL, Virginia C. Lowell, Debtors.

Richard D. LOWELL, Virginia C. Lowell, Plaintiffs,

v.

FIRST NATIONAL BANK OF CAPE COD, Defendant.

Bankruptcy No. 81–00475–JG.
Adv. No. A81–0614.

United States Bankruptcy Court,
D. Massachusetts.

May 28, 1982.

Joseph Sattler, Jr., Sattler & Roberts, Hyannis, Mass., for plaintiffs.

Martin J. O'Malley, Jr., Hyannis, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The debtors initiated this adversary proceeding and seek to avoid the defendant's lien as impairing exempt property under 11 U.S.C. Section 522(f).[1] The parties waived trial and submitted the issue on brief. The facts are not in dispute.

On or about July 27, 1979, the First National Bank of Cape Cod (Bank) filed a complaint against the debtors, in the First District Court of Barnstable County. The Bank's complaint was based upon an overdue unsecured personal loan note given by the debtors to the Bank on December 19, 1978. On or about August 21, 1979 the Bank filed an application to default the debtors for failure to answer and requested a hearing thereon. On August 31, 1981 the debtor, Virginia Lowell appeared at the default hearing and entered into a written Agreement for Judgment (Agreement) with the Bank in the amount of $1,012.83 and promised to make monthly payments to the Bank. In order to secure these payments the debtors gave the Bank a second mortgage on their residence.[2] The Bank record-

---

1. 11 U.S.C. Section 522(f) provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtors would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or . . .

2. Although the agreed statement of facts refers to August 31, 1981 as the date of the default hearing and subsequent Agreement, this court

ed the mortgage on September 10, 1979 in the Barnstable County Registry of Deeds.

No payments were made and the Bank filed the Agreement along with the original note and a request for an execution in the state court on or about October 25, 1979. On December 17, 1980 the bank received an Execution from the state Court against the debtor in the amount of $1,062.24.

On January 16, 1981, the Workingmens Co-operative Bank, which held a first mortgage on the debtors' residence foreclosed and sold the residence at a public auction. A surplus was generated by the sale in the amount of $1,185.00.

█ The debtors seek to avoid the defendant's interest in the surplus by having this court declare the second mortgage a judicial lien which impairs their exemption under Section 522(f). The defendant agrees that if the debtors' contention is correct, the lien is avoidable in its entirety. However the defendant argues that its lien is a valid security interest and as such is not subject to avoidance. This court agrees.

Under 11 U.S.C. Section 101(27) the term judicial lien is defined as "a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding". The term lien is defined in 11 U.S.C. Section 101(28) as a "charge against or interest in property to secure payment of a debt or performance of an obligation." Judicial liens as defined are avoidable under 11 U.S.C. Section 522(f). *The Commonwealth National Bank v. U.S.A.*, 669 F.2d 105, 8 B.C.D. 814 (3rd Cir. Ct.App., 1982).

Here the debtors seek to have the defendant's lien and mortgage set aside as a single transaction which evolved out of the judicial process. The question then is whether or not the Agreement of August 31, 1979 and the mortgage entered into on the same date are a judicial lien. Under Massachu-

setts law an agreement for judgment after litigation has commenced is as binding as if it were an outcome the court reached after a full hearing. *Ansara v. Regan*, 276 Mass. 586, 177 N.E. 671 (1931). The Agreement for Judgment is a judicial lien. *In re Galbraith*, 15 B.R. 549, 8 B.C.D. 672 (Bkrtcy.E. D.Pa.1981); *In re Porter*, 7 B.R. 356 (Bkrtcy.E.D.Pa.1980). The problem is treating the Agreement and the mortgage as a single transaction.

The debtors rely on *In re Porter* supra to support the proposition that a lien which arises by a confession of judgment is a judicial lien. But *Porter* can be distinguished. In *Porter* the court defeated the validity of the security agreement by finding an inadequate description of the collateral in the agreement, and thus under Pennsylvania law it failed as an interest in real estate. The dicta in *Porter* indicates that a different result would have been reached if a second mortgage had in fact been granted.

In the instant case it has been stipulated that the mortgage was recorded and no question as to its validity has been raised.

The Code divides liens into three mutually exclusive categories; judicial liens, security interests, and statutory liens.[3]

█ A valid mortgage is a lien, since it is a charge against or interest in property to secure payment of a debt. It is not affected by 11 U.S.C. Section 522(f) because it is a security interest and not a judicial lien and because the charge against or interest in property is created by a conveyance or contract rather than by a judgment or other legal proceeding. *The Commonwealth National Bank v. U.S.A.* supra. Thus even though this Court may be able to avoid the agreement of August 31, 1979 as a judicial lien which impairs debtors' exemption, this

---

must view that date as a typographical error as all other relevant dates occur in 1979 and 1980.

**3.** The legislative comment to Section 101(28) of the Code states:

In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three

categories are mutually exclusive and are exhaustive except for certain common law liens. H.R.Rep.No.95–595, 95th Cong., 1st Sess. 312 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess. 25 (1978), reprinted in (1978) U.S.Code Cong. & Ad.News 5787, 5811.

would not have the effect of denying defendant's status as a secured creditor under the second mortgage.

The debtors also seek to avoid the mortgage for failure of consideration and separately for unconscionability in the circumstances surrounding the granting of the mortgage.

■ The debtors' claim that they received no new value, thus there was a failure of consideration. The debtors further assert that at best the defendant merely forebeared from levying on his execution, a right it expressly retained and later exercised. The defendant asserts that a pre-existing debt is sufficient consideration for the granting of a security agreement. This court agrees. We find that in Section 1–201(44)(b) of the Uniform Commercial Code:

> (44) . . . a person gives value for rights if he acquires them;
>
> (b) as security for or in total or partial satisfaction of a pre-existing claim . . .

One element of a valid security agreement is the giving of value, and value can be a pre-existing claim. Or as it is succinctly stated in 59 C.J.S. Mortgages § 91 "(a) pre-existing debt or liability is a sufficient consideration for a mortgage, and no new consideration is necessary at the time of the execution of the mortgage except when the mortgagor is a stranger to the debt."

■ Here, we have an admittedly valid pre-existing debt which this court finds to be valid consideration for the second mortgage. This court finds further consideration flowing from the defendant's forebearance from suit, as well as the extension of time granted the debtors for payments under the note, the settlement of a claim, and creditor's change of position.

Finally the debtors seek relief on equitable grounds alleging unconscionability in the circumstances surrounding the granting of the mortgage.

Unconscionability is a term of art which can best be defined as "that which affronts the sense of decency." *Gimbel Bros., Inc. v. Swift,* 62 Misc.2d 156, 307 N.Y.S.2d 952 (Cir.Ct.1970) Or as Webster's Dictionary adds, " . . . lying outside the limits of what is reasonable or acceptable: shockingly unfair, harsh or unjust . . ." The purpose of the doctrine is two fold "prevention of oppression and of unfair surprise" Comment U.C.C. Section 2–302.

The debtors are not alleging substantive unconscionability which goes to the terms of the contract itself, but rather procedural unconscionability which consists of some impropriety during the process of forming the contract which deprives a party of a meaningful choice.[4]

In this case the debtors allege unconscionability in the signing of an Agreement for Judgment and the granting of a second mortgage by the debtor/wife in the hallway of the State court.

■ The burden of proof as to unconscionability is on the party alleging same. The law is clear that a finding of procedural abuse inherent in the formation process must be coupled with a substantive abuse which is generally manifested as an unfair or harsh contracted term which appropriates to the drafting party an unfair advantage at the non drafting party's expense. Williston on Contracts, Section 1763 A, 3rd ed. vol. 15 pg. 218, (1972).

■ There has been no showing by the debtors of any unfair or oppressive terms within the second mortgage. The debtors have not even brought the terms of the mortgage into question, in fact the court has not been supplied a copy of said mortgage from which oppressiveness or lack thereof could be determined. Furthermore it is clear that the debtors knew they were entering into a mortgage transaction. They had a choice of allowing the defendant to execute and levy on its judgment or to grant the second mortgage to guarantee

---

4. *Franks Maintenance & Engineering, Inc. v. C. A. Roberts Co.,* 86 Ill.App.3d, 42 Ill.Dec. 25, 408 N.E.2d 403 (Ill.App.1980).

payments under the agreement. They chose the latter and now seek to repudiate that choice by alleging unfair advantage by a party with a superior bargaining position.

This court finds based on the facts before it that the defendant did not take unfair advantage of the debtors. The terms of the contract are fair and the debtors received what they bargained for when they granted the second mortgage and received a stay of execution, an extended period of time to pay out the underlying debt and the settlement of a claim.

This court finds that the defendant's security interest is valid and it is entitled to recover $1,062.24 from the surplus of the foreclosure sale.