# UNION PACIFIC RAILROAD COMPANY *v.* LAR-AMIE STOCK YARDS COMPANY.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF WYOMING.

No. 570.   Submitted October 14, 1913.—Decided December 1, 1913.

The first rule of construction of statutes is that legislation is addressed
to the future and not to the past.   This rule is one of obvious justice.

Unless its terms unequivocally import that it was the manifest intent
of the legislature enacting it, a retrospective operation will not be
given to a statute which interferes with antecedent rights or by
which human action is regulated.

The right of way granted under the Land Grant Act of July 1, 1862,
was a very important aid to the railroad, and was a present absolute
grant subject to no conditions except those absolutely implied, such
as construction and user.

The act of June 24, 1912, c. 181, 37 Stat. 138, permitting state statutes
of limitation to apply to adverse possession of portions of the right
of way granted to the railroad company under the act of July 1,
1862, did not have a retroactive effect.   *Sohn* v. *Waterson,* 17 Wall.
596.

Congress did not intend by the act of June 24, 1912, to exercise powers
to alter and amend the charters of the railroad companies reserved
by the acts of July 1, 1862, and July 2, 1864.

This court will not assume that Congress intends to forfeit or limit any
of the rights granted to the transcontinental railroads unless it does
so explicitly.

An amendment to an existing charter enacted under the reserved power
to alter and amend will not be construed as having a retroactive
effect as to vested property rights in absence of clear intent of the
legislature enacting it.

THE facts, which involve the construction and applica-
tion of the Union Pacific Land Grant Act of July 1,
1862, the act of June 24, 1912, and the extent of rights
claimed to have been acquired under the latter act by
adverse possession in the railroad right of way, are stated
in the opinion.

*Mr. John W. Lacey, Mr. N. H. Loomis* and *Mr. Herbert
V. Lacey* for plaintiff in error:

Prior to the act of June 24, 1912, title to the right of
way could not have been acquired by adverse possession.
*Nor. Pac. R. R. Co.* v. *Townsend,* 190 U. S. 267; *Kindred*
v. *Un. Pac. R. R. Co.,* 225 U. S. 582, 597; *Nor. Pac. R. R.
Co.* v. *Smith,* 171 U. S. 260, 275; *Nor. Pac. R. R. Co.*
v. *Ely,* 197 U. S. 1; *Stuart* v. *Un. Pac. R. R. Co.,* 227 U. S.
353.

Under the Wyoming statute of limitations (1910,
§ 4295) sufficient time had not elapsed since June 24, 1912,
for the acquisition of title by adverse possession. Nor
has title been acquired by adverse possession by virtue
of the act of June 24, 1912. That act, in so far as it at-
tempts to convey title by adverse possession, is not re-
troactive.

It is apparent that the statute is intended to have a
prospective and not a retrospective operation. Not only
is the language subject to that construction, but no other
reasonable construction is possible. The omission of any
express declaration regarding the past is worthy of notice.
Had Congress intended to give retrospective effect it
would have been a very simple matter to have expressly
recorded such intention in that part of the act.

An act of Congress will not be construed as having a
retrospective operation unless the language imperatively
demands it. *United States* v. *Burr,* 159 U. S. 78, 82;
*United States* v. *Am. Sugar Co.,* 202 U. S. 563, 577; *Twenty
Per Cent. Cases,* 20 Wall. 179, 187.

This rule is always applied where the result of a retrospective operation would be to injuriously affect an existing status. *United States* v. *Heth*, 3 Cr. 413; Black's Const. Law, 2d ed., p. 627, § 286; *Reynolds* v. *McArthur*, 2 Pet. 417, 434; *Dash* v. *Van Kleeck*, 7 Johnson, 447, 503; *Society* v. *Wheeler*, 2 Gall. 105; *S. C.*, 22 Fed. Cas. 756, 767; *Calder* v. *Bull*, 3 Dall. 386; *Winfree* v. *Nor. Pac. Ry. Co.*, 227 U. S. 296, 301.

If construed as retroactive, the act operates immediately and by virtue of itself alone, to take from the plaintiff its vested right and title to the property in controversy and transfer the same to the defendant without due process of law, and is, therefore, unconstitutional.

Congress has not the power to accomplish this without the consent of the present owner of the property. *Sinking Fund Cases*, 99 U. S. 700, 718; *United States* v. *Un. Pac. R. R. Co.*, 160 U. S. 1, 33. See also *Wallbridge* v. *Commissioners*, 74 Kansas, 341.

Titles vested under act of Congress could not, without the consent of the grantee or its successor, be legislated back to the United States, or legislated into the ownership of anyone else; nor could the title or tenure created by the grant of said lands or right of way be changed, without such consent, by subsequent act of Congress. *Proprietors* v. *Laboree*, 2 Maine (2 Greenleaf), 275, 288; *Webster* v. *Cooper*, 14 How. 488; *Thistle* v. *Frostburg Coal Co.*, 10 Maryland, 129, 144; *Osborn* v. *Jaines*, 17 Wisconsin, 592; *Fletcher* v. *Peck*, 6 Cr. 87, 135; *Sturges* v. *Crowninshield*, 4 Wheat. 122, 206; *Sohn* v. *Waterson*, 17 Wall. 596, 599; *Herrick* v. *Boquillas Land Co.*, 200 U. S. 96, 102.

From the cases cited the statute under consideration must be construed as prospective only, if that be reasonably possible. If the statute be found clearly retroactive, then, under the same authorities, it must be held unconstitutional, as taking from the plaintiff in error its property without due process of law.

*Nor. Pac. Ry. Co.* v. *Ely,* 197 U. S. 1, is not in point. The statute in that case validated certain conveyances of the railroad company, and was held to operate retrospectively because it contained a provision that it should have no validating force until accepted in writing by the company, 33 Stat. 538, c. 1782. The railroad company did file written acceptance and could not claim that it was deprived of its property without due process of law, because it had accepted and assented to every transfer within the terms of the act.

*Mr. Roderick N. Matson* and *Mr. T. Blake Kennedy* for defendant in error:

The act in controversy is an alteration or an amendment of the original grants to the Pacific Railroad Companies, and as such violates no constitutional provision.

Congress had the right to, and did take notice that these railroad companies had silently assented for long periods of time to the absolute and undisputed possession of large portions of this right of way, had removed in many instances their fences, making a right of way of fifty feet on each side of their main track, and in other cases erecting in the first instance their fences along a line fifty feet distant from either side of said track.

The United States has by this act stated that those persons who have held portions of this right of way outside of a space fifty feet in width on either side of the main track for a period of time, which in the State where said controversy arises shall amount to adverse possession, that the title by adverse possession may be invoked as against such right of way.

Congress has taken notice of the fact that the railroad companies to whom the original rights of way were granted, and their successors, have consistently and continuously used but one hundred feet of that right of way. The right of Congress to alter, amend and repeal

franchises where the power is reserved has been frequently sustained. See *Miller* v. *State*, 15 Wall. 478, 498; *Holyoke* v. *Lyman*, 15 Wall. 500, 519; *Tomlinson* v. *Jessup*, 15 Wall. 454, 459; *Railroad Company* v. *Maine*, 96 U. S. 499, 510; *Shields* v. *Ohio*, 95 U. S. 319, 324; *Sinking Fund Cases*, 99 U. S. 700; *Calder* v. *Michigan*, 218 U. S. 591; *Looker* v. *Maynard*, 179 U. S. 46, 52.

In applying the law as laid down by this court no vested right has been impaired, or contract obligation violated; nor has there been any attempt on the part of Congress to pass a law, which would permit the taking away from the railroad company any portion of its right of way which had been put by it to its corporate uses.

Considered as a retrospective act it was intended by Congress as such, and contravenes no constitutional provision.

The construction contended for by counsel for plaintiff in error, that it operates only prospectively, makes an almost absurd situation. At any time within the next ten to twenty years, depending upon the statutes governing adverse possession in the various States, the railroad company may go into court and recover possession of the original four hundred foot right of way, exclusive of the one hundred feet now in use, and those interests which are thereby affected are without standing in court, and have no defense which may be maintained. Such a construction would clearly be against the public interest, and the act itself would avail nothing, except a notice to the railroad that it must within the succeeding twenty years proceed to take some action against those interests which have been occupying certain portions of this right of way unforbidden by the company or assented to by it.

A retrospective law is not in itself unconstitutional. *Satterlee* v. *Matthewson*, 2 Pet. 380, 413; *Curtis* v. *Whitney*, 13 Wall. 68, 70; *Charles River Bridge Case*, 11 Pet. 420, 540; *Watson* v. *Mercer*, 8 Pet. 88, 110; *Balt. & Susq. R. R.*

*Co.* v. *Nesbit,* 10 How. 395, 401; *Blount* v. *Windley,* 95 U. S. 173, 180; *Calder* v. *Bull,* 3 Dall. 386, 391.

Laws retrospective in their nature do not offend against the Constitution, but have frequently been held to be beneficial in their nature, and to operate for the general good of the community. *United States* v. *Un. Pac. R. R. Co.,* 160 U. S. 1, 33; *Munn* v. *Illinois,* 94 U. S. 113, 134.

The question of vested rights is closely associated with the question of the enjoyment of contracts, which are guaranteed by constitutional provision; and as to what may be considered within the scope of legislative powers, so far as impairing contract obligations under constitutional restriction is concerned, the field is very broad. *Spring Valley Water Works* v. *Schottler,* 110 U. S. 347; *Morley* v. *Lake Shore Ry. Co.,* 146 U. S. 162; *Curtis* v. *Whitney, supra.*

It is evident that the act in controversy was passed by Congress for the public good, and while in a way it might be said to enhance the difficulty of performance, in that in the far distant future the railroad company might have use for a right of way four hundred feet in width, and yet the contract between the Government and the railroad in the nature of its original charter and grant remains in full force by virtue of the terms of the act guaranteeing to the railroad a right of way not less than one hundred feet in width. *Pearsall* v. *Great Northern R. R. Co,* 161 U. S. 646, 673.

The act of the legislature absolutely forbidding the exercise of powers originally granted to the corporation, was sustained in the interest of the public, where those powers remain unexecuted. In the case at bar Congress has enacted a law in the interest of the public diminishing the grant to the Pacific Railroad Companies from a right of way as originally granted of four hundred feet to a right of way as amended of one hundred feet, but only as to those portions of the original right of way outside of the

one hundred foot width which have remained unused by the companies for long periods of time. *L. & N. R. R. Co.* v. *Kentucky,* 161 U. S. 677, 700.

Mr. Justice McKenna delivered the opinion of the court.

Ejectment to recover certain described lands alleged to constitute part of the right of way of plaintiff (being such in the court below, we will so call it).

The allegations of the complaint are that plaintiff and defendant are corporations, and that plaintiff is engaged in the operation of a railroad from Ogden, in Utah, easterly through certain States to Council Bluffs, Iowa, and over the lands in controversy, they being portions of its right of way made by the act of Congress of July 1, 1862, c. 120, 12 Stat. 489, of the width of 400 feet. The right of way was acquired under said act of Congress, which is entitled "An Act to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean, and to secure to the government the use of the same for postal, military and other purposes." Section 2 of the act provides as follows: "That the right of way through the public lands be, and the same is hereby, granted to said company [the Union Pacific Railroad Company] for the construction of said railroad and telegraph line; and the right, power, and authority is hereby given to said company to take from the public lands adjacent to the line of said road, earth, stone, timber, and other materials for the construction thereof; said right of way is granted to said railroad to the extent of two hundred feet in width on each side of said railroad where it may pass over the public lands, including all necessary grounds for stations, buildings, work-shops, and depots, machine shops, switches, sidetracks, turntables, and water stations."

By virtue of said act of Congress and amendatory acts, certain railroad companies, which are enumerated, theretofore organized and existing in pursuance of said acts and subject to and enjoying the rights created thereby, were consolidated into a new corporation known as "The Union Pacific Railway Company," and the corporation thus created became vested with all the rights of the said constituent corporations, and the plaintiff has become the successor of the Union Pacific Railway Company and is entitled to the possession of the land in controversy and that defendant wrongfully keeps it out of the possession thereof. The ground of the asserted right of defendant is alleged to be an act of Congress entitled "An act legalizing certain conveyances heretofore made by the Union Pacific Railroad Company," approved June 24, 1912, c. 181, 37 Stat. 138, which act, it is alleged, is unconstitutional in that it seeks to deprive plaintiff of its vested rights and titles in and to the lands and to deprive it of its lands and property without due process of law.

The answer of defendant admits all of the allegations of the complaint except the possession of the legal title to the lands in plaintiff and that they are unlawfully held from it and alleges that defendant and its immediate grantors have been for more than ten years prior to the filing of the complaint in the adverse possession thereof under the act of Congress of June 24, 1912, and that such possession constitutes a bar to the action.

Plaintiff demurred to the answer as not constituting a defense. The demurrer was overruled and, plaintiff declining to plead further, judgment was entered that it ' take nothing in said action" and that the defendant have and recover costs. This appeal was then prosecuted.

The crux of the controversy is the act of June 24, 1912. There is no question of the grant of the right of way and its extent or that the lands in suit are within it.

The act provides that all conveyances and agreements

heretofore made by the enumerated railway or railroad companies "of or concerning land forming part of the right of way" under the act of Congress of July 1, 1862, "and all conveyances or agreements confining the limits of said right of way, or restricting the same, are hereby legalized, validated, and confirmed to the extent that the same would have been legal or valid if the land involved therein had been held by the corporation making such conveyance or agreement under absolute or fee simple title.

"That in all instances in which title or ownership of any part of said right of way heretofore mentioned is claimed as against said corporations, or either of them, or the successors or assigns of any of them, by or through adverse possession of the character and duration prescribed by the laws of the State in which the land is situated, such adverse possession shall have the same effect as though the land embraced within the lines of said right of way had been granted by the United States absolutely or in fee instead of being granted as a right of way."

Two contentions are made by plaintiff, (1) The act is not retroactive; (2) If it be so construed, it is unconstitutional because it takes plaintiff's vested right and title to the property and transfers the same to defendant without due process of law.

It is established that the right of way to the several railroads was a present absolute grant, subject to no conditions except those necessarily implied, such as that the roads should be constructed and used. And it has been decided that the right of way was a very important aid given to the roads, (*Railroad Company* v. *Baldwin*, 103 U. S. 426; *Stuart* v. *Union Pacific Railroad Co.*, 227 U. S. 342), and that it could not be voluntarily transferred by the companies nor acquired against them by adverse possession. *Northern Pacific Railway Co.* v. *Townsend*, 190 U. S. 267; *Northern Pacific Railroad Co.* v. *Smith*, 171

U. S. 260, 275; *Northern Pacific Railway Co.* v. *Ely,* 197 U. S. 1, 5. Of this defect of power in the companies and the defect of right in the possessors of the right of way, the act of June 24 was intended to be corrective. But of what time was it intended to speak—to the past or future?—to apply to that which was done, or that which was to be done? There is no doubt as to the answer in the case of agreements or conveyances by the company. The act is explicit that they are those "heretofore made" by the enumerated companies. There is no such qualifying word of the "title or ownership" "claimed as against" the corporation by adverse possession. Construction, therefore, becomes necessary, and the first rule of construction is that legislation must be considered as addressed to the future, not to the past. The rule is one of obvious justice and prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed. The rule has been expressed in varying degrees of strength but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights or by which human action is regulated, unless such be "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature." *United States* v. *Heth,* 3 Cranch, 399, 413; *Reynolds* v. *McArthur,* 2 Pet. 417; *United States* v. *American Sugar Refining Co.,* 202 U. S. 563, 577; *Winfree, Admr.,* v. *Northern Pac. Railway Co.,* 227 U. S. 296. Surely such imperative character cannot be assigned to the words of the act of June 24; and the intention is not so manifest as to strengthen the insufficiency of the words. Indeed, all reasonable considerations determine the other way.

We have seen that the conveyances and agreements which were legalized were those theretofore made, that is, consummated acts of the company deliberately done to transfer its right. Can it be said that the adverse

possession which was to transfer the right was to be less complete, not fully adverse in fact and law, at once assertive of title and concessive of it? It is to be remembered that there was no sanction of a right to the possession of the defendant or possibility of a right by the railroad company's non-action. There was not a moment of time in which the railroad was called upon to act or lose its right; there was not a moment of time when the possession of defendant initiated an adverse right or constituted an adverse right. This being the situation, it is difficult to believe—or certainly a belief is not compelled—that Congress intended to give to the past conduct of the railroad company a consequence it was not intended to have and did not have. A statute having such a result may incur the opposition of the Constitution. When such may be the result a different construction of the statute is determined. *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366, 408; *Harriman* v. *Interstate Commerce Commission*, 211 U. S. 407.

In *Sohn* v. *Waterson*, 17 Wall. 596, the questions we are now discussing came up for consideration. We there expressed, in considering a statute of limitations whose literal interpretation would have had the effect of making it applicable to actions which had accrued prior to its passage, the rule against retrospective operation, the injustice and unconstitutionality of it. We said that a statute of limitations may affect actions which have accrued as well as those to accrue, and "whether it does or not will depend upon the language of the act and the apparent intent of the legislature to be gathered therefrom." But it was said that, even against a literal interpretation of the terms of the statute, "it will be presumed that such was not the intention of the legislature. Such an intent would be unconstitutional. To avoid such a result, and to give the statute a construction that will enable it to stand, courts have given it a prospective

operation." And three modes were pointed out as having been adopted by the courts: (1) to make the statute apply only to causes of action arising after its passage; (2) to construe the statute as applying to such actions only as have run out a portion of the time, but which still have a reasonable time left for the prosecution of the action before the statutory time expires—which reasonable time is to be estimated by the court—leaving all other actions accruing prior to the statute unaffected by it; and (3) the rule announced in *Ross* v. *Duval,* 13 Peters, 45, 62, and *Lewis* v. *Lewis,* 7 Howard, 776, 778.

Of the first two modes there was condemnation. The third was approved. It was said of the first that it left "all actions existing at the passage of the act, without any limitation." Which would not be presumed as intended. The second was said to be founded on no better principle than the first, and was a more arbitrary rule than that, as it left "a large class of actions entirely unprovided with any limitation whatever, or, as to them, unconstitutional."

Speaking of the rule announced in the cited cases, it was said: "In those cases certain statutes of limitation— one in Virginia and the other in Illinois—had originally excepted from their operation non-residents of the State, but this exception had been afterwards repealed; and this court held that the non-resident parties had the full statutory time to bring their actions after the repealing acts were passed, although such actions may have accrued at an earlier period. 'The question is,' says Chief Justice Taney (speaking in the latter of the cases just cited), 'From what time is this limitation to be calculated? Upon principle, it would seem to be clear, that it must commence when the cause of action is first subjected to the operation of the statute, unless the legislature has otherwise provided.'"

*Sohn* v. *Waterson* was cited and its principle applied in *Herrick* v. *Boquillas Cattle Co.,* 200 U. S. 96. A paragraph

in the statutes of Arizona prescribed a limitation of actions as follows: "Any person who has a right of action for recovery of any lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using and enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward." Rev. Stats. of Arizona, 1901, par. 2938.

It will be observed that the language of the paragraph, as of the statute passed on in *Sohn* v. *Waterson*, or, it may be, the act of June 24 under review, literally interpreted, would apply to causes of action which have accrued. The Supreme Court of the Territory refused to give that effect to the provision, and "decided," as this court said, "that under no canon of construction or rule giving a retroactive effect to a new statute of limitations could paragraph 2938 be made to apply to this case." And, after considering all possible constructions of the statute expressed by the Supreme Court of the Territory, among others, that if it be construed as absolutely barring causes of action existing at the time of its passage, it was unconstitutional, citing *Sohn* v. *Waterson*, this court approved the views expressed and said that the court committed no error in determining that under no possible hypothesis could the limitation prescribed operate to bar the plaintiff's action.

The principle of these cases forbids a retrospective operation to be given to the statute under consideration. To do so would cause in a high degree the evil and injustice of retroactive legislation. As said by plaintiff's counsel, the possession of defendant prior to the statute "had no effect on the title, and was not, as between the parties, even a threat against it." And we are loath to believe that Congress intended by an imperative declaration of law, immediately operating, to give defendant's possession another character—one hostile to the title.

Defendant does not combat plaintiff's contentions based

on considering the act of June 24, 1912, as one of limitation. Indeed, the admission is "that prior to the passage of the Act in controversy, title by adverse possession could not be acquired as against the plaintiff in error in its original right of way grant, and it is further admitted that title could not have been acquired by adverse possession subsequent to the passage of the Act." Defendant does not regard the act as a limitation of the remedy but as amendatory of the charter of the company, an exercise of a right reserved in the acts of July 1, 1862 [1] and July 2, 1864.[2] The argument is, disregarding its involutions, that the right of way was not a right in fee but only a right to use, which was forfeited by non-use, and that the right which thereby reverted to the United States was, by the act of June 24, conveyed to those in possession of the land. And the exercise of the right reserved, it is contended, neither impairs any contract with the railroad nor divests its property. Nor does it come under the condemnation of being retroactive legislation, it is further contended. We need not follow the discussion by which these contentions are attempted to be supported. We meet them all by the declaration that Congress by the act of June 24 did not intend to exercise the power over the charters of the companies reserved to it. The exercise of such power would naturally only find an impulse in some large national purpose and would hardly be provoked by a desire to legalize the encroachments here and there on the right of way of a transcontinental railroad.

We are constrained to believe that when Congress intends to forfeit or limit any of the rights conveyed to aid that great enterprise, it will do so explicitly and directly

---

[1] "Congress may at any time, having due regard for the rights of said companies named herein, add to, alter, amend, or repeal this act." 12 Stat. 497.

[2] "And be it further enacted, That Congress may, at any time, alter, amend, or repeal this act." C. 216, 13 Stat. 356, 365.

by a measure proportionate to the purpose and not leave it to be accomplished in a piece-meal and precarious way— not by confirming a few conveyances which may have been made or legalizing trespasses which may be made.

But if it could be conceded that the act of June 24 was intended as an amendment of the charters of the companies, the question would still occur as to its effect—as to what time it should be considered as applying, whether to the past or the future. That question we have decided.

*Judgment reversed and cause remanded with directions to sustain the demurrer to the answer.*

MR. JUSTICE HUGHES dissents.

MR. JUSTICE HOLMES, MR. JUSTICE LURTON, and MR. JUSTICE PITNEY, took no part in the decision.