BECKER, Circuit Judge,
concurring in part and dissenting in part.
The four cases before us each raise a different question. Those questions presented in Dobslaw and Burkholder are relatively easy to answer; for the reasons stated in the margin, I join in the majority’s disposition of those two cases.[1] Although I *870 disagree with the majority’s conclusion in Ashe, I do not find Ashe to be a particularly difficult case, and I explain in Part IIB, infra, my reasons for dissenting from the majority’s judgment. The most difficult— and most important — case before us is Bosworth. While I concur in the result reached by the majority in that case, I believe that the question presented is far more difficult than the majority’s opinion suggests; indeed, I think that the question is an extremely close one, and I will explain in Part IIA, infra, why I think it is so close.
Ashe is now before us on remand from the Supreme Court for reconsideration in light of United States v. Security Industrial Bank, - U.S. -, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982); the other cases were consolidated with Ashe following the remand. An exegesis of my position therefore must commence with a discussion of Security’s holding — a useful undertaking, in view of the limited attention it has received in the majority’s opinion.
I. United States v. Security Industrial Bank
Security Industrial Bank presented the question whether debtors could invoke section 522(f)(2) of the 1978 Bankruptcy Act to avoid nonpossessory, nonpurchase-money security interests created prior to the enactment of the statute.[2] Appellees, a group of creditors, there argued that allowing debtors to use section 522(f)(2) to avoid such pre-enactment liens on the debtors’ personal property would violate the fifth amendment to the United States Constitution. The Court of Appeals for the Tenth Circuit held that. Congress had intended section 522(f)(2) *871 to invalidate liens created before the enactment date of the 1978 Act and ruled that such retrospective application effected a complete and uncompensated taking of private property, in violation of constitutional precepts. Rodrock v. Security Industrial Bank, 642 F.2d 1193 (10th Cir.1981).
The Supreme Court affirmed the judgment of the Tenth Circuit but relied on a different rationale. The Court agreed that “[t]he bankruptcy power is subject to the Fifth Amendment’s prohibition against taking private property without compensation,” 103 S.Ct. at 410, and also declared itself satisfied that “there is substantial doubt whether the retroactive destruction of the appellees’ liens in these cases comports with the Fifth Amendment,” id. 103 S.Ct. at 412 [3] But, instead of deciding the constitutional question, the Court proceeded to
consider whether, as a matter of statutory construction, § 522(f)(2) must necessarily be applied in that manner. We consider the statutory question because of the “ ‘cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided.’ ”
Id. (quoting Lorillard v. Pons, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978)).
To perform its task, the Court invoked a basic canon of statutory construction: a statute that would interfere with “antecedent rights” will not be construed to apply retrospectively “ ‘unless such be “the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.” ’ ” Id. 103 S.Ct. at 413 (quoting Union Pacific Railroad Co. v. Laramie Stock Yards Co., 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913)). Noting that “[t]his principle has been repeatedly applied to bankruptcy statutes affecting property rights,” id., the Court examined the legislative history of the 1978 Bankruptcy Act and found no evidence that Congress had intended section 522(f)(2) to apply retrospectively.[4] Id. 103 S.Ct. at 414. Accordingly, in the absence of countervailing legislative intent, the Court ‘“decline[d] to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the’ takings clause.” Id. (quoting NLRB v. Catholic Bishops of Chicago, 440 U.S. 490, 507, 99 S.Ct. 1313,1322, 59 L.Ed.2d 533 (1979)).
Security Industrial Bank, therefore, enunciated four principles of direct relevance to the cases now before us: (1) There is “substantial doubt” that the application of section 522(f)(2) to liens created before the enactment of the statute comports with the fifth amendment; (2) we nevertheless should refrain from deciding the constitu *872 tionality vel non of the alleged taking if we can avoid that question by means of statutory construction; (3) in performing this exercise, we must recognize that, “in the absence of an explicit command from Congress,” “[n]o bankruptcy law shall be construed to eliminate property rights which existed before the law was enacted,” 103 S.Ct. at 414; and (4) the legislative history of the 1978 Act contains no “clear expression” of a congressional desire for retrospective application and, indeed, “suggests that Congress may not have intended that § 522(f) operate to destroy pre-enactment property rights,” id. It is against this backdrop — to which I believe that the majority pays too little attention — that we must consider the Bosworth and Ashe cases.
II. Does Security Industrial Bank Apply?
Security Industrial Bank dealt with the avoidability under section 522(f)(2) of nonpossessory, nonpurchase-money security interests created in personal property of the debtor before the enactment of the 1978 Bankruptcy Act. Bosworth and Ashe involve the avoidability of pre-enactment judicial liens under section 522(f)(1). We thus are called upon to determine whether the retrospective application of section 522(f)(1) raises the same problems-as does the retrospective application of section 522(f)(2).
I first will consider whether a judicial lien, like a nonpossessory, nonpurchasemoney security interest, constitutes a property right, for, in the absence of such a property interest, the fifth amendment’s prohibition against taking private property for public use without just compensation does not apply, see supra note 3. In considering this question, Í note that, “while the meaning of ‘property’ as used in the Fifth Amendment [is] a federal question, ‘it will normally obtain its content by reference to local law.’ ” United States v. Causby, 328 U.S. 256, 266, 66 S.Ct. 1062,1068, 90 L.Ed. 1206 (1946) (quoting United States ex rel. Tennessee Valley Authority v. Powelson, 319 U.S. 266, 279, 63 S.Ct. 1047, 1054, 87 L.Ed. 1390 (1943)). Accordingly, it is to Pennsylvania law that I must look in determining whether a judicial lien created by a cognovit note constitutes “property.”[5]
The question whether any “property” was taken in Bosworth is an extremely close one, but, because I conclude that no “property” was involved, I need not consider in any greater depth the principles of Security. I do conclude, however, that the Bank did have a property interest in the real estate at issue in Ashe. I therefore will have to consider the question whether there is any reason to treat a property right under section 522(f)(1) differently from a property right under section 522(f)(2).
A. Bosworth
Cognovit notes (or confessions of judgment) are an ancient security device[6] and have long been recognized by Pennsylvania law. See Swarb v. Lennox, 405 U.S. 191, 193, 92 S.Ct. 767, 768, 31 L.Ed.2d 138 (1972). It is hornbook law that
[a] confession of judgment constitutes a voluntary submission to the jurisdiction of the court, and it gives by consent, and without the service of process, a result which could otherwise be obtained only by process through a formal proceeding; it constitutes but one of the ways by which a person may be sued.
* :}! sj: % sk
The record of the entry of a judgment by a prothonotary, under a power contained in the instrument on which judg *873 ment is confessed, is ... regarded as a record of the court, having all the qualities of a judgment on a verdict. A judgment entered by the prothonotary under a warrant of attorney, in legal effect, is the same as if the judgment had been entered by the court, and it has all the qualities and effect of a judgment on a verdict.
11 Standard Pennsylvania Practice 2d § 67:4 (1982) (footnotes omitted).
Under Pennsylvania law, a judgment for payment of money, when entered of record in the office of a county prothonotary, operates as a lien upon all real property of the debtor in that county. 42 Pa.Cons.Stat. Ann. § 4303(a) (Purdon 1983);[7] see also id. §§ 1722(b) and 2737(3); Pa.R.Civ.P. 2951. Because the holder of a cognovit note thus becomes a lienholder once he has entered the judgment of record in the prothonotary’s office, appellant Commonwealth National Bank, aided by amicus curiae Pennsylvania Bankers Association, asserts that it acquired a property interest in all real property owned by appellees at the time the Bank recorded the cognovit notes here at issue[8] and that Security Industrial Bank bars the retroactive application of section 522(f)(1) to that property interest.[9]
Appellees and intervenor/appellee United States, however, contend that a judgment lien is not a property interest because it is insufficiently “choate” and does not give the judgment creditor a right in specific property. Instead, they assert, the lien is merely a charge against property, which serves as nothing more than collateral for the money that the creditor actually wishes to recover. Appellees note that the lien does not endow the lienholder with title to the land; rather, the judgment creditor first must file an action in assumpsit and obtain a writ of execution before he can levy, execute, or garnish on the basis of the judgment.[10] 41 Pa.Stat.Ann. § 407(a) (Purdon 1983).[11] Thus, appellees contend, a ju *874 dicial lien constitutes not a property interest but a right to levy on land and thereby to obtain such an interest.
To support their position, appellees rely primarily on two venerable cases, Conard v. Atlantic Insurance Co., 26 U.S. (1 Pet.) 386, 442-43, 7 L.Ed. 189 (1828), and Grevemeyer v. Southern Mutual Fire Insurance Co., 62 Pa. 340, 342 (1869). In Conard, the Supreme Court explicated a prior case involving Pennsylvania law:
[I]t is not understood, that a general lien by judgment on land constitutes, per se, a property or right in land itself. It only confers a right to levy on the same, to the exclusion of other adverse interests, subsequent to the judgment; and when the levy is actually made on the same, the title of the creditor, for this purpose, relates back to the time of his judgment, so as to cut out intermediate incumbrances. But subject to this, the debtor has full power to sell or otherwise dispose of the land. His title to it is not divested or transferred by. the judgment, to the judgment-creditor. It may be levied upon by any other creditor, who is entitled to hold it against every other person, except such judgment creditor; and even against him, unless he consummates his title by a levy on the land, under his judgment. In that event, the prior levy is, as to him, void; and the creditor loses all right under it. The case stands, in this respect, precisely upon the same ground as any other defective levy or sale. The title to the land does not pass under it. In short, a judgment-creditor has no jus in re, but a mere power to make its general lien effectual, by following up the steps of the law, and consummating his judgment by an execution and levy on the land. If the debtor should sell the estate, he has no right to follow the proceeds of the sale into the hands of vendor or vendee, or to claim the purchase-money in the hands of the latter. It is not like the case where the goods of a person have been tortiously taken and sold, and he can trace the proceeds, and, waiving the tort, chooses to claim the latter. The only remedy of the judgment-creditor is against the thing itself, by making that a specific title, which was before a general lien. He can only claim the proceeds of the sale of the land, when it has been sold on his own execution, and ought to be applied to its satisfaction.
26 U.S. (1 Pet.) at 442-43 (discussing Thelusson v. Smith, 15 U.S. (2 Wheat.) 396, 4 L.Ed. 271 (1817)). The Pennsylvania Supreme Court adopted a similar approach in Grevemeyer:
[A] judgment is a general, and not a specific lien.... If there be personal property of the debtor, it is to be satisfied out of that. If there be not, then it is a lien on all his real estate without discrimination, and hence the plaintiff is not interested in the property as property, but only in his lien. As was said in Coover v. Black, 1 Barr 493, the judgment-creditor has neither jus in re nor ad rem, as regards the defendant’s property. He has a lien, and the law gives a right to satisfaction out of the property, and that is all.
62 Pa. at 342 (citation omitted); see also Matter of Hinson, 20 B.R. 753, 758 (Bkrtcy. D.S.C.1982); In re Lattimore, 12 B.R. 111, 114 (Bkrtcy.W.D.N.Y.1981); In re Burkholder, 11 B.R. 346, 351 (Bkrtcy.E.D.Pa. 1981); cf. 11 Standard Pennsylvania Practice 2d, supra, § 70:4 (“The lien of a judgment on lands does not constitute a property, estate, or right in the land itself.... The creditor is not interested in the proper *875 ty as property, but only in his lien.”) (footnotes omitted).
I find the argument that a judicial lien is not a property interest very troubling because of the obvious practical effects of a cognovit-judgment lien on all realty within a county. As anyone who has practiced law in Pennsylvania knows, a judgment debtor who wishes to sell his encumbered land will not be able to obtain a declaration of clear title from a title-insurance company, even if the judgment lien has been opened; the title company either will hold back from the proceeds of the sale an amount sufficient to satisfy the outstanding lien or will insist upon receiving indemnification with good security. Moreover, a cognovit-judgment lien is taxable to the judgment creditor under the County Personal Property Tax, 72 Pa.Stat.Ann. § 4821 (Purdon 1968).[12] And most important, a judgment lien would seem to be more specific and choate than the nonpossessory, nonpurchase-money security interests deemed to be property in Security Industrial Bank.[13] That case involved security interests in an array of household items, which, as a category, are undoubtedly far more alienable, fungible, and, I would assert, nonspecific than are the components of the category “all of the judgment debtor’s real property within the county.” I also note that post-Security bankruptcy-court cases have considered judicial liens to be property and have barred the avoidance of pre-enactment liens. In re Hoffman, supra note 1, 28 B.R. at 506-07; In re Negri, 27 B.R. 941, 942-43 (Bkrtcy.E. D.N.Y.1983); In re White, 25 B.R. 339, 340 (Bkrtcy. 1st Cir.1982); cf. Note, Constitutionality of Retroactive Lien Avoidance Under Bankruptcy Code Section 522(f), 94 Harv.L.Rev. 1616 (1981) (pre-Security conclusion that retroactive application violates “takings clause” of fifth amendment).
Despite these countervailing considerations, however, I cannot ignore the language of Conard and Grevemeyer; nor can I forget the nature, incidents, and effects of cognovit-note liens, including the state policy that facilitates the interposition of defenses to the judgment, see supra note 10. I therefore reluctantly conclude that a judicial lien is not “property” under Pennsylvania law and that the dictates of the fifth amendment thus do not apply. Accordingly, I agree with the majority that the judgment in Bosworth must be affirmed.[14]
B. Ashe
Ashe presents an entirely different situation. Mr. and Mrs. Ashe executed the cognovit note at issue on December 26, 1973, well before the 1978 Bankruptcy Act was enacted.[15] The loan became delinquent, and, on May 30, 1979, in the “gap” period between the enactment and effective dates of the 1978 Act, see supra note 1, the Bank filed a complaint in assumpsit pursuant to 41 Pa.Stat.Ann. § 407(a), supra note 11, so *876 that it could levy on the Ashes’ property. The Bank obtained a default judgment, and a writ of execution was issued on August 31, 1979, still within the “gap” period.
It is the action in assumpsit and the ensuing writ of execution that differentiate this case from Bosworth, for, while a bare judicial lien apparently is too general and inchoate to constitute a property interest, the writ of execution perfects the lien, quantifies its amount, attaches it to specific real property, and elevates the judgment creditor’s interest to something virtually akin to title. If the lien constituted merely “a right to levy,” Conard v. Atlantic Insurance Co., supra, 26 U.S. (1 Pet.) at 443, the writ of execution converts that right into a full-fledged property interest. Accordingly, the Bank acquired a property interest in the Ashes’ real estate before the 1978 Bankruptcy Act became effective on October 1, 1979.[16]
Because we are dealing with a legitimate property interest in Ashe, Security Industrial Bank must govern the disposition of that case — unless there is something in the nature of that property interest that would render Security inapplicable. The majority purports to have found some such thing in the form of the 1898 Bankruptcy Act, which was in effect at the time of the property interest’s creation. The majority’s theory is that the 1978 Bankruptcy Act wrought no change “of constitutional significance” in its predecessor’s treatment of judicial liens and that the parties therefore created the pre-enactment liens with full notice of avoidance provisions substantially identical to section 522(f)(1). Accordingly, the argument continues, no taking could have occurred because the statutory framework governing the transaction provided for precisely the kind of avoidance rights now asserted by appellees.
Unfortunately, the majority’s approach not only appears to decide constitutional questions that, under Security, might better be left unresolved; in my view, it also is wrong. I do not believe that the 1898 Act can be so blithely equated with the 1978 Act or that the Bank may be said to have had notice of the substance of section 522(f)(1) before that section became law.
It is perfectly true that section 67(f) of the 1898 Bankruptcy Act provided for automatic invalidation of judicial liens; that provision, however, applied only to “levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him.... ” 11 U.S.C.A. § 107(f) (West 1927).
The 1898 Act, therefore, put judgment creditors at risk for only four months. *877 Moreover, the statute in effect in the 1970s, as amended in 1966, provided:
Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this title: Provided, however, That if such person is not finally adjudged a bankrupt in any proceeding under this title and if no arrangement or plan is proposed and confirmed, such lien shall be deemed reinstated with the same effect as if it had not been nullified and voided.
11 U.S.C. § 107(a)(1) (1976). Thus, the property interest in this case was created subject to a statutory framework that notified the judgment creditor of the risk of avoidability of his lien only during a four-month period and only if the judgment debtor had been insolvent at the time the lien was obtained or if the lien was sought and permitted in fraud of other provisions of the Bankruptcy Act.
It therefore would appear that the avoid-ability provisions of the 1898 Bankruptcy Act, as amended, differed significantly from section 522(f)(1). The 1978 Act places no temporal limitation on avoidability; nor does it contain the other two restrictions found in section 107(a)(1) of the predecessor statute. Accordingly, I cannot agree that the 1898 Act provided the Commonwealth National Bank with notice of the substance of section 522(f)(1), and I therefore reject this route as a way of avoiding the holding of Security Industrial Bank.
This case, therefore, involves a property interest created before the effective date of the 1978 Bankruptcy Act, at a time when applicable law provided for avoidability of judicial liens under conditions substantially different from those now codified in section 522(f)(1). Given these facts, I see no way around Security Industrial Bank. In order to avoid deciding the constitutional takings-clause issues posed by retroactive application of section 522(f)(2), the Supreme Court construed that section to apply only to liens created after the enactment (or effective) date of the 1978 Bankruptcy Act. In the absence of contrary legislative intent, I am constrained to follow the same course here and to construe section 522(f)(1) in the Ashe case prospectively only. I therefore conclude that section 522(f)(1) does not apply to the lien held by the Bank on the Ashes’ property. Accordingly, I dissent from the judgment in Ashe.
III. Conclusion
For the reasons expressed above, I concur in the judgments in Dobslaw and Burkholder; I also concur, albeit with great reluctance, in the judgment in Bosworth. I dissent, however, from the judgment in Ashe.
SUR PETITION FOR REHEARING
Before SEITZ, Chief Judge, and ALDI-SERT, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOYITER and BECKER, Circuit Judges.
The petition for rehearing filed by appellant The Commonwealth National Bank in the above entitled cases having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
Circuit Judges ADAMS, JAMES HUNTER, III, GARTH and BECKER would grant the petition for rehearing.

. The parties in Dobslaw executed the notes at issue after the effective date of the Bankruptcy Reform Act of 1978; there thus can be no “retroactivity” problem here, and the only question is whether the cognovit notes constitute avoidable “judicial liens” within the meaning of 11 U.S.C. § 522(f)(1). We have, however, previously resolved this issue. Gardner v. Commonwealth of Pa., Dep’t of Pub. Welfare, 685 F.2d 106, 108 (3d Cir.), cert. denied, — U.S.-, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982), held that “a lien obtained by confessed judgment is a judicial lien avoidable under section 522(f)(1) of the Code, and not a security inter *870 est or a statutory lien.” We are bound by Gardner and therefore must affirm the judgment in Dobslaw.
Because Burkholder raises some of the problems also found in Bosworth, see infra Part IIA, it could be viewed as a much harder case. There is, however, a simple alternative ground for affirming the bankruptcy court’s holding. The note in Burkholder was executed on January 19,1979, and filed with the prothonotary in February 1979, after the enactment date, but before the effective date, of the 1978 Bankruptcy Act. (The 1978 Bankruptcy Act was signed into law by the President on November 6, 1978, (the “enactment date”) but did not become effective until October 1, 1979 (the “effective date”).) The case thus presents a “gap” lien, created at a time when the parties to the transaction may be deemed to have had notice of the already enacted but not yet effective statute. The Supreme Court has expressly reserved decision on the validity of applying § 522(f)(2) to “gap” liens. United States v. Security Indus. Bank, 103 S.Ct. 407, 410 n. 4, 414 n. 11 (1982).
In addressing the constitutionality of applying § 522(f) to “gap” liens, the Court of Appeals for the Ninth Circuit wrote:
Although a close question is presented, we agree with the bankruptcy court in the instant cases that it is “not unreasonable to impute to credit companies and their attorneys the knowledge and understanding of a new law after that law has been enacted.” V/hen [the bank] made the loans [in the “gap” period], it should have been fully aware that the exemption provisions of § 522 would become effective on October 1, 1979, and that any bankruptcy filed subsequent to that date could result in an avoidance of their liens on the exempt property. The bankruptcy court properly distinguished between cases where the liens arose before the enactment date and those arising after the enactment date where the creditor had knowledge of the prospective exemption provisions.
In re Webber, 674 F.2d 796, 804 (9th Cir.), cert. denied,-U.S.-, 103 S.Ct. 567, 74 L.Ed.2d 931 (1982). The Court of Appeals for the Tenth Circuit recently adopted Webber’s analysis in In re Groves, 707 F.2d 451 (10th Cir.1983); accord In re Hoffman, 28 B.R. 503, 505, 507 (Bkrtcy.D.Md.1983). I assume that the majority approves of the reasoning in the Ninth Circuit’s opinion, and I, too, concur. I therefore agree that the judgment in Burkholder must be affirmed.

. Section 522(f) provides:
Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien; or
(2) a nonpossessory, nonpurchase-money security interest in any—
(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
(C) professionally prescribed health aids for the debtor or a dependent of the debtor.
*871 11 U.S.C. § 522(f) (Supp. Ill 1979).

. The Court made clear that nonpossessory, nonpurchase-money security interests constitute property rights — a necessary predicate to a fifth-amendment claim, for that amendment provides that “private property [shall not] be taken for public use, without just compensation,” U.S. Const, amend. V (emphasis added). See 103 S.Ct. at 411 (distinguishing contractual from property rights). Indeed, the Government conceded at oral argument that state law treated the liens at issue as property. Id. n. 6.

. Indeed, the Court found some evidence that Congress had not intended § 522(f)(2) to have retrospective effect:
An early version of the 1978 Act contained an explicit requirement that all its provisions “shall apply in all cases or proceedings instituted after its effective date, regardless of the occurrence of any of the operative facts determining legal rights, duties or liabilities hereunder.” H.R. 31, 94th Cong., 1st Sess., § 10-103(a) (1975), reprinted in Bankruptcy Act Revision: Hearings on H.R. 31 and H.R. 32 before the Subcomm. on Civil and Constitutional Right [sic] of the House Comm, on the Judiciary, 94th Cong., 1st Sess. (1975), n. 14 app., at 320-321. This provision may or may not have been deleted directly in response to the comments of witness William Plumb to the effect that retroactive invalidation of liens may be an unconstitutional taking. Id., at 2066-2067. Nonetheless, Congress’s elimination of an explicit command is some evidence that it did not intend to depart from the usual principle of construction. See Bradley v. Richmond School Board, 416 U.S. 696, 716, n. 23, 94 S.Ct. 2006, 2018 n. 23, 40 L.Ed.2d 476 ... (1974) (“We are reluctant to read into the statute the very ... limitation that Congress eliminated.”).
103 S.Ct. at 414.

. It is clear that Pennsylvania law applies here: the notes were made in Pennsylvania between Pennsylvania parties and operate as liens on Pennsylvania real estate.

. According to Blackstone,
it is very usual, in order to strengthen a creditor’s security, for the debtor to execute a warrant of attorney to some attorney named by the creditor, empowering him to confess a judgment by either of the ways just now mentioned (by nihil dicit, cognovit actionem, or non sum informatus ) in an action of debt to be brought by the creditor against the debtor for the specific sum due: which judgment, when confessed, is absolutely complete and binding; provided the same (as is also required in all other judgments) be regularly docquetted....
3 W. Blackstone, Commentaries *397 (footnote omitted).

. Section 4303(a) provides:
Any judgment or other order of a court of common pleas for the payment of money shall be a lien upon real property on the conditions, to the extent and with the priority provided by statute or prescribed by General Rule adopted pursuant to section 1722(b) (relating to enforcement and effect of orders and process) when it is entered of record in the office of the clerk of the court of common pleas of the county where the real property is situated, or in the office of the clerk of the branch of the court of common pleas embracing such county.

. A judgment lien attaches only to property or interests that the judgment debtor owned at the time of entry of judgment; it is not a lien on after-acquired lands or interests in lands. However, real estate acquired by the debtor after the date of entry of judgment is subject to a lien based on the levy of an execution issued on the judgment and levied on the land. 11 Standard Pennsylvania Practice 2d, supra, § 70:12.

. The Bosworths signed the note on April 17, 1978, and the Bank entered the note with the prothonotary on April 27, 1978, before the enactment date of the 1978 Bankruptcy Act.

. Moreover, confessed judgments may be opened, Pa.R.Civ.P. 2959, and defenses interposed, 41 Pa.Stat.Ann. § 407(a) (Purdon 1983), infra note 11. This Court has described the process by which a cognovit judgment may be opened and has noted the facility with which a judgment debtor may do so.
After the confession, a defendant may petition to open or strike the judgment____ Testimony, depositions, admissions or other evidence may be produced and “if evidence is produced which in a jury trial would require the issues to be submitted to the jury, the court shall open the judgment.” This latter provision has the effect of requiring an adjudication of the defenses supported by evidence. If they should be decided by a jury, the court must open the judgment.
Thus, the state proceedings are much more than simply a judgment entered by confession. When there is a proceeding to open the judgment, ... the litigation becomes an adversary proceeding in which there is an adjudication upon the merits of defenses raised.
Riverside Memorial Mausoleum, Inc. v. UMET Trust, 581 F.2d 62, 67 (3d Cir.1978) (footnote omitted) (quoting Pa.R.Civ.P. 2959(e)).

. Section 407(a) provides:
As to any residential real property, a plaintiff shall not have the right to levy, execute or garnish on the basis of any judgment or decree on confession, whether by amicable action or otherwise, or on a note, bond or other instrument in writing confessing judgment until plaintiff, utilizing such procedures as may be provided in the Pennsylvania Rules of Civil Procedure, files an appropriate *874 action and proceeds to judgment or decree against defendant as in any original action. The judgment by confession shall be changed as may be appropriate by a judgment, order or decree entered by the court in the action. After the above mentioned original action has been prosecuted and a judgment obtained, that judgment shall merge with the confessed judgment and the confessed judgment shall be conformed as to amount and execution shall be had on the confessed judgment. The parties to the action shall have the same rights as parties to other original proceedings. Nothing in this act shall prohibit a residential mortgage lender from proceeding by action in mortgage foreclosure in lieu of judgment by confession if the residential mortgage lender so desires.

. I realize, however, that states can also tax contract rights.

. As noted above, see supra note 3, the Government conceded at oral argument in Security that the liens at issue were treated as property under state law. 103 S.Ct. at 411 n. 6.

. My conclusion here provides the alternative holding for Burkholder, see supra note 1, for, if the Bank did not have a property interest in the Bosworths’ real estate, neither did it have one in the Burkholders’. The “gap” analysis therefore is not the only reason to affirm the judgment in that case.

. It is true that the Bank “revived” the note on November 22, 1978, pursuant to Pennsylvania law’s prescription that a judgment lien remains effective for only five years unless revived. See 42 Pa.Cons.Stat.Ann. § 5526 (Purdon 1981); 11 Standard Pennsylvania Practice 2d, supra, § 70:158. Although that revival occurred during the “gap” period and the revival action thus might be viewed as having been brought with notice of the 1978 Bankruptcy Act, see In re Webber, supra note 1, I do not read Pennsylvania law as endowing the revived judgment with the characteristics of a new judgment; rather, the revival merely continues or extends the vitality of the original judgment. See Philadelphia Nat’l Bank v. Taylor, 421 Pa. 35, 37-38, 218 A.2d 246, 247-48 (1966) (revival of judgment does not alter priority among judgment creditors); Pa.R.Civ.P. 3025 (setting forth rules “to revive and continue the lien of a judgment”); 11 Standard Pennsylvania Practice 2d, supra, § 70:159 (“principal effect of the usual revival, or judgment of revival, is to continue the lien of the original judgment”). Thus, I do not believe that the 1978 revival means that we are dealing with a “gap” lien.

. I do not believe that the “gap” analysis explored above, see supra note 1, applies to these facts. That analysis is predicated on the theory that “it is ‘not unreasonable to impute to credit companies and their attorneys the knowledge and understanding of a new law after that law has been enacted,’ ” In re Webber, supra, 674 F.2d at 804, the rationale being that creditors may be expected to act in accordance with the law that they know will eventually be in effect. It would be unreasonable, however, to apply this analysis to a gap-period assumpsit action on a pre-enactment lien, for, unlike the creditors in Webber, Groves, and Burkholder, the Bank in Ashe would be deprived of all notice and of opportunity to structure its affairs in accordance with the new statute were that law to apply as of its enactment date. Indeed, the majority tacitly concedes the inapplicability of “gap” analysis by treating the lien in Ashe as a property interest and by contrasting the lien in Bosworth with the lien in Ashe, see majority op. at WB.
To the extent that the majority reads my opinion as stating that “the Holt v. Henley rule applies to liens arising in the so called ‘gap period’ between the passage and the effective date of that Act,” majority op. at IV, the majority mischaracterizes my position. As I stated above, see supra note 1, I agree with Webber and Groves insofar as those cases hold that liens created after the enactment date are avoidable under § 522(f)(1). I reject the majority’s “gap” analysis only in the Ashe case, in which the assumpsit action, rather than the creation of the lien by execution and entry of the cognovit note, occurred within the “gap” period. I also note that Webber involved only a bare judicial lien that had not been converted into a property interest by an action in assumpsit and writ of execution; Groves did not involve judicial liens at all but, rather, § 522(f)(2) security interests, such as were considered in Security to be “property” within the meaning of the fifth amendment.