Russell JACKSON, et al., Plaintiffs,

v.

The PEOPLE'S REPUBLIC OF CHINA, a foreign government, Defendant.

Civ. A. No. 79–C–1272–E.

United States District Court, N.D. Alabama, E.D.

Oct. 26, 1984.

W. Eugene Rutledge, Rutledge & Year-out, Birmingham, Ala., for plaintiffs.

Warren Lightfoot, Bradley, Arant, Rose & White, Birmingham, Ala., for defendant.

## MEMORANDUM OF OPINION

CLEMON, District Judge.

The plaintiffs instituted this action on November 13, 1979 seeking payment of certain bearer bonds, now in default, which were issued by the Imperial Chinese Government in 1911. The jurisdiction of the Court was invoked under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1330, 1391 and 1602 *et seq.* A default judgment was entered against the defendant, the People's Republic of China (China) on October 21, 1981 due to China's failure to appear or answer. Damages were subsequently awarded in 1982. 550 F.Supp. 869.

In August of 1983, China made a special appearance requesting the Court to set aside its entry of default judgment. On February 27, 1984, following a hearing on the issue, this Court entered an order pursuant to Rule 60(b) of the Fed.R.Civ.P. which set aside the default judgment against China. Noting that the controversy was fraught with jurisdictional issues and mindful of the far reaching ramifications that the ultimate decision could have on Sino-American relations, the Court found that justice and the public interest dictated that the default judgment be set aside.

The case is now before the Court upon China's motion to dismiss. In support of its motion, China alleges that the FSIA, which was enacted in 1976, does not retroactively apply to a cause of action arising out of a 1911 transaction.

■ The law is clear that the FSIA is the exclusive basis for jurisdiction in this case. *Ruggiero v. Compania Peruana de Vapores,* 639 F.2d 872, 875–76 (2nd Cir.1981); *Rex v. Compania Pervana de Vapores,* 660 F.2d 61, 65 (3rd Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *Williams v. Shipping Corp. of India,* 653 F.2d 875, 880–81 (4th Cir.1981), *cert. denied,* 445 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982); *Goar v. Compania de Vapores,* 688 F.2d 417 (5th Cir.1982); *McKeel v. Islamic Republic of Iran,* 722 F.2d 582 (9th Cir.1983).

Therefore, the question of the retroactive application of the statute is dispositive of the case, if the statute is found to be prospective only.[1] In that situation, the case must be dismissed for want of jurisdiction.

### I.

■ Courts generally look unfavorably upon the retroactive application of statutes. In the landmark case of *Union Pac. R. Co. v. Laramie Stock Co.,* 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179 (1913) the Supreme Court pronounced the basic tenet governing the application of statutes as follows:

---

1. Inasmuch as the question of retroactivity is dispositive, the Court finds it unnecessary to address the other issues which were also raised by China.

... The first rule of construction is that legislation must be considered as addressed to the future and not to the past. The rule is one of obvious justice ... [and] has been expressed in varying degrees of strength, but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be "the unequivocal and inflexible import of the terms, and the manifest intention of the legislation." [quoting *United States v. Heth*, 3 Cranch 399, 413, 2 L.Ed. 479, 483].

231 U.S. at 199, 34 S.Ct. at 102.

■ It is equally well established that the rights of a party pursuant to a contractual agreement are determined by the law existing when the contract was made. "Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order." *Home Building and Loan Association v. Blaisdell*, 290 U.S. 398, 435, 54 S.Ct. 231, 239, 78 L.Ed. 413 (1934).

These controlling principles dictate that the Court determine whether retroactive application would encroach upon notions of fairness and justice by interfering with China's legitimate expectations based upon the existing law at the times relevant to this controversy.

Historically, the doctrine of absolute immunity was internationally recognized as the policy governing the acts of a foreign state. The American doctrine of absolute sovereign immunity was enunciated as early as 1812 by the United States Supreme Court in the bulwark case of *The Schooner Exchange v. McFadden*, 7 Cranch 116, 3 L.Ed. 287 (1812). This doctrine remained indubitably intact, as a basic tenet of American law when the Hukuang Railway Bonds were issued in 1911; it continued to

be the law of our country until the date of the maturity of the bonds in 1951.[2]

The doctrine of absolute immunity slowly began to lose momentum in the thirties and forties and it eventually gave way in 1952. At that time the United States Department of State adopted the standard of restrictive sovereign immunity as the official policy of the United States. 26 Dept. State Bull. 984 (1952) (the "Tate Letter"). This theory provided that a foreign sovereign was immune from jurisdiction with respect to its public acts (*jure imperii*) but not as to its private acts (*jure gestionis*).

Finally, in 1976, the policy of restrictive sovereign immunity as embodied in the Tate Letter was codified by the enactment of the FSIA.

The foregoing chronology of events convincingly establishes that restrictive immunity was not the law at the time of the issuance or maturity of the bonds at issue. Therefore, in order for restrictive immunity, as codified in the FSIA, to have retroactive effect, retroactivity must be the "unequivocal and inflexible import of the terms and the manifest intention of the legislation." *Union Pac. R. Co., v. Laramie Stock Co., supra.*

The FSIA does not contain a clear and unequivocal statement that it was intended to apply retroactively to transactions which predated 1952. Quite to the contrary, the language of the Act is expressly prospective, providing that 'claims of foreign states to immunity *should henceforth* be decided by courts of the United States in conformity with the principles set forth in this chapter." 28 U.S.C. § 1602. The prospective nature of the Act is further evidenced by the fact that Congress provided for a 90 day delay period in order to give adequate notice to foreign nations of the United States' *new* policy of restrictive immunity. Foreign Sovereign Immunities Act of 1976, Pub.L. No. 94–583, § 8, 90 Stat. 2898 (1976).

---

**2.** In the Spring of 1937, the government of the Republic of China offered to extend the date of the maturity of the bonds from June 15, 1951 until June 15, 1976. This arrangement, how-

ever, was not mutually agreed upon and its implementation was further impeded by the outbreak of the Sino-Japanese War in July of 1937.

In accordance with the plain language of the statute, the FSIA covers claims arising or accruing after its enactment. There being no language to the contrary, this is the obvious "import of the terms and manifest intention" of Congress.

Similarly, the legislative history of the FSIA provides no support for the position that the Act should be given retroactive application. Although the legislative history traces the historical evolution of the FSIA, there is a conspicuous absence of any reference to retroactive application of the Act. S.Rep. No. 94–1310, 94th Cong., 2d Sess. (1976); H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin.News 1976, p. 6604.

At the time of the issuance of the bonds in 1911 up until the date of their maturity in 1951, China relied on the well-founded expectation that the then extant, almost universal doctrine of absolute sovereign immunity governed all interactions between her and the United States and the citizens of the two respective countries. Concomitantly, China had no apprehension of being haled into a court in the United States to answer for any default of the bond issue. Similarly, the predecessors in interest of the plaintiff bondholders class had no expectation of any right to bring an action in a court of the United States upon a default of the bond issue.

■ The law dictates that a statute shall not be retroactively applied to alter antecedent rights unless such is the unequivocal import of its terms or the manifest intention of the legislators. The Court concludes that neither the language of the FSIA nor its legislative history evince that it be retroactively applied; and to apply the FSIA in this action would clearly alter the antecedent rights of China.

Recent courts which have addressed this issue have reached a similar conclusion. In *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne*, 605 F.2d 648 (2nd Cir.1979) the Second Circuit declined to apply the FSIA retroactively finding that to do so would prejudice the antecedent rights of the parties. Subsequently, the Second Circuit squarely addressed the retroactive application of the FSIA with respect to subject matter jurisdiction in *Corporacion Venezolana de Fomento v. Vintero Sales*, 629 F.2d 786 (2nd Cir.1980). There the Court found that the FSIA was not intended to retroactively confer subject matter jurisdiction. See also *Ohntrup v. Firearms Center, Inc.*, 516 F.Supp. 1281 (E.D. Penn.1981).

Based on the foregoing discussion, the Court finds and concludes that the FSIA cannot be retroactively applied; and, accordingly, this action must be dismissed for want of subject matter jurisdiction. A separate order embodying this opinion shall issue.